

**Bethany Benes**
**Attorney at Law**
(703) 260-9325 Direct
bbenes@bethunebenes.com

November 1, 2021

<u>**VIA EMAIL ONLY**</u>
Jay McDannell, Esq.
jmcdannell@berliklaw.com

*Re: Kamin v. Gunkova;* **Case No. CL-21-1557**

Dear Mr. McDannell:

I hope this letter finds you well and rested following the hearing of last month. This letter addresses a number of pending issues in an attempt to amicably resolve the issues and create a way forward for our clients.

**1. Stryker Services**

It is Mr. Kamin's understanding that Stryker Services claims it is owed a certain amount in brokerage fees relating to the purchase of the Property. Mr. Kamin denies signing the Agreement produced by Ms. Gunkova as GUNKOVA_006083-68086, which appears to have been signed electronically on behalf of Mr. Kamin on November 9, 2020. Nevertheless, Mr. Kamin does not want BNG to face any negative consequences while this issue is litigated between our clients. While reserving all rights, Mr. Kamin authorizes the payment of the principal balance allegedly owed to Stryker. Mr. Kamin requests that BNG negotiate the alleged interest due in light of the issues with the "signed" contract. Please advise if your client agrees.

**2. Financial Accounts**

It is my understanding that since the hearing last month, Ms. Gunkova has provided Mr. Kamin with the "Company ID" for online access to the AUB accounts. It is Mr. Kamin's understanding that he now has full "viewing" access to all BNG financial accounts held at TD Bank and AUB. Please confirm and advise if any other accounts exist for which Mr. Kamin is not currently aware. Mr. Kamin requests that the parties agree to maintain this arrangement during the pendency of this litigation, whereby each party has full viewing access to the financial accounts of BNG. Please advise if your client agrees.

**3. Financial Reports**

As previously discussed, Mr. Kamin requested that BNG's Quickbooks files be transferred and/or maintained through an online account to ensure that each member has adequate access to the Company's financial documents. It is my understanding tha

PLAINTIFF'S EXHIBIT

**Kamin 55**

Jay McDannell, Esq.
November 1, 2021
Page 2 of 5

Gunkova has set up an online account for BNG and that Mr. Kamin has a viewing account. However, as of the transmission of this letter, no entries have been made to BNG's online Quickbooks account.

Mr. Kamin requests that BNG's Quickbooks files are timely maintained each month, with full viewing capability for each member. Mr. Kamin requests that all other financial documents that support the Quickbooks entries be sent to him on or before the 5th of each month to ensure that the financials of the Company are being timely and properly maintained. Please advise if your client agrees.

### 4. Tax Returns

I do not think it is contested that the financial records of BNG kept by Ms. Gunkvoa and/or Mr. Bogatin are less than ideal. As a result, and as referenced by Ms. Harper in both her written reports and her oral testimony, the tax returns of BNG contain many errors. Mr. Kamin requests that Ms. Harper be authorized to conduct a full audit of the Company's records and tax returns to identify all errors to aid in the filing of any necessary amended returns. Following the results of Ms. Harper's audit, Mr. Kamin requests that BNG timely file any necessary amended returns to avoid negative tax consequences. Please advise if your client agrees.

### 5. BNG's Legal Counsel

Late last month, Mr. Kamin received a proposed lease for proposed tenant, Sterling Dental. It appears from the "track changes" contained the document that the proposed tenant does not agree with the terms of the Lease and desires to modify the document. Mr. Kamin is not aware as to who drafted the Lease, nor is Mr. Kamin aware as to who is handling the negotiations of the terms. The proposed lease contains a number of errors and does not disclose to Mr. Kamin the anticipated amount of Building Expenses set forth in Section 35. As sent to Mr. Kamin, Mr. Kamin cannot agree to the incomplete draft lease. Mr. Kamin believes that the real estate needs of BNG require a real estate attorney to draft legal documents and advise BNG as to the appropriate negotiations. Please advise if your client agrees.

### 6. Email Accounts

Mr. Kamin is aware of the following email accounts that have been created by and/or used by Ms. Gunkova and/or Mr. Bogatin: harry@bnggroupllc.com ; harry@ariamedispa.com; and grishak301@gmail.com. Please provide all relevant information related to the credentials for each account, including the web address to access the account, username, and password. Please also advise if there are any other email addresses that have been created by and/or used by Ms. Gunkova and/or Mr. Bogatin for Mr. Kamin, and if so, provide the credentials for each.

As you are aware, Mr. Kamin rejects Mr. Bogatin's previously stated position that Mr. Bogatin had authority to act on behalf of Mr. Kamin, including to create and/or use any accounts on behalf of Mr. Kamin. To make it further clear, Mr. Kamin does not authorize Mr. Bogatin and/or Ms. Gunkova to create and/or use any email account on behalf of Mr. Kamin. Please

confirm that your clients will cease all use of the relevant email accounts purportedly belonging
to Mr. Kamin.

### 7. Aria Medi Spa and Sterling Investment LLC

Mr. Kamin is aware that his name has been associated with Ms. Gunkova's other
business, Aria Medi Spa, by Ms. Gunkova and Mr. Bogatin, including the Building's lobby sign
indicating that Mr. Kamin is a "Director" of Aria Medi Spa.  I recall you telling me at the
hearing that you believed that such reference has been removed (or was in the process of being
removed).  Please confirm that Mr. Kamin's name has been removed from information for Aria
Media Spa in the lobby sign, or advise as to when such removal will be accomplished. Please
also confirm that your clients will cease all use of Mr. Kamin's name with regards to Aria Medi
Spa and Sterling Investment LLC.

Please also note that Mr. Kamin has not and does not authorize any transfers of BNG
assets to Aria Medi Spa and Sterling Investment LLC.  Please confirm that your clients agree to
cease any such transfers during the pendency of this litigation.

### 8. Discovery Deficiencies

The following deficiencies previously set forth in my September 20 and October 6 letters
remain with regards to Ms. Gunkova's discovery responses:

(i)  My September 20 letter requested the (i) identity of Ms. Gunkova's former expert and
any documents related to such expert in response to Request No. 24 and (ii) a proper
identification by specific bates label of the documents Ms. Gunkova contends are
specifically responsive to Request No. 55. To date, I have not received any information.
Please advise as to where you stand on your positions with producing such information so
that we may proceed accordingly;

(ii)  Ms. Gunkova testified at her deposition about the following documents that are
responsive to Mr. Kamin's discovery requests but have not yet been produced by Ms.
Gunkova.  For your convenience, I have included the Request that seeks each in
parenthesis.

   a.  Invoices related to services provided for the benefit of Mr. Kamin and applied as
       distributions to Mr. Kamin for the tax year 2020 (Request No. 7);

   b.  Documents evidencing the monies allegedly contributed by Ms. Gunkova
       personally to BNG, including contributions made by check, wire transfer, and
       cash (Request No. 7);

   c.  Financial documents related to expenses paid for Aria Medi Spa (Request Nos. 7,
       24, 25);

    d.   Documents and communications related to SBA loans obtained by BNG and/or using BNG information, including any SBA loans obtained by Sterling Investments, LLC and/or Skin Logic LLC d/b/a Aria Medi Spa using BNG financial information (Request No. 7);

    e.   Documents related to payments made to notary public Kirk Hilliard relating to BNG and/or Mr. Kamin, including invoices, proof of payment, and receipts for services rendered (Request No. 60); and

(iii)   Ms. Gunkova identified a number of individuals in her deposition that were not included in her responses to Interrogatory No. 2 of Mr. Kamin's 1st Set of Interrogatories. Please supplement Ms. Gunkova's responses to provide the identifies and contact information for the following:

    a.   Dr. Bruce Freedman;

    b.   Jack Miller;

    c.   Unidentified male witness at document signing on third day of Mr. Kamin's October 2020 visit;

    d.   Igor Lutskavich;

    e.   David Cruise;

    f.   Terrence Overchuck;

    g.   Maxim Prokofyev;

    h.   Ms. Gunkova's mother, Natalia Gorbunova;

    i.   Farrukh Kuchakov; and

    j.   the mother-in-law of Farrukh Kuchakov, Ludmila.

**9.**    **Personal Contact**

As you may be aware, Mr. Kamin, at the encouragement of Mr. Stolbunov, has communicated directly with your clients since last month's hearing, notwithstanding Mr. Kamin's prior requests not to do so. The recent discussions and email communications have only led to further distrust, as it is Mr. Kamin's position that Ms. Gunkova's emails to Mr. Kamin providing a "summary" of their discussions are not accurate. Mr. Kamin again requests that all communications be directed to counsel and that Ms. Gunkova and Mr. Bogatin do not contact Mr. Kamin or Mr. Stolbunov, whether by telephone, text message, or email. Please confirm that your clients have been informed of Mr. Kamin's direction and that your clients agree to communicate via counsel.

Jay McDannell, Esq.
November 1, 2021
Page 5 of 5


********************


    Thank you in advance for your prompt attention to these issues.  I look forward to continuing to work with you in this case and remain hopeful that we can reach an amicable resolution prior to the trial currently scheduled to begin almost two years from now.


Sincerely,

Bethany Benes



**Bethany Benes**
**Attorney at Law**
(703) 260-9325 Direct
bbenes@bethunebenes.com

November 18, 2021

<u>**VIA EMAIL ONLY**</u>
Jay McDannell, Esq.
jmcdannell@berliklaw.com

*Re: Kamin v. Gunkova;* Case No. CL-21-1557

Dear Mr. McDannell:

This letter responds to your email of 7:49 am today.  First, I am sorry to hear of your family loss.  My sympathies are extended, and I wish your family peace in what I imagine is a difficult time.

I am perplexed by your response that your client has answered every request to date. While I agree that *some* answers have been provided, my letters of October 6, November 1, and November 11 outline the clear deficiencies in those answers.  While I understand that you do not feel there is a specific urgency to the discovery requested, the Rules are clear that discovery must be answered within 21 days of service and supplemented promptly.  My first letter to you was dated October 6, and yet we have received no supplementation, nor any indication as to when we can expect such supplementation.  Please advise as to when you will be supplementing Ms. Gunkova's responses to resolve the deficiencies.  <u>Please note that if we do not receive full and complete responses and production by December 2, Mr. Kamin has instructed me to file a Motion with the Court and will notice the hearing for December 17 to avoid further unnecessary delay. If you are not able to provide full and complete responses by December 2, please advise as to which date your client will be able to comply to avoid motions practice.</u>

Regarding Mr. Kamin's access to BNG's financials, Mr. Kamin has access to AUB account numbers ending in 8041 and 6442, as shown in the attached.  Please note that Mr. Kamin still does not have access to AUB account numbers ending in 6666 and 7649, for which Mr. Moghul confirmed in prior hearings were active.  If these accounts are no longer active, please advise.  With regards to the Quickbooks accounts, please also see the attached that evidence that the login and password provided to Mr. Kamin on November 9, 2021 (username: Legal password: Harry20165) do not grant access to the Quickbooks files.

Please note, to date, I have not received any deficiency letter as to Mr. Kamin's discovery responses. As stated in my prior letters, if you contend that deficiencies exist, please identify them and I will make sure that we pay prompt attention to resolving those issues.

Jay McDannell, Esq.
November 18, 2021
Page 2 of 2

   Your email incorrectly states that I rejected your proposal to implement a formal procedure to have professionals collect our clients' respective emails.  Let me clarify my position so that there is no question:  As I stated to you in your office on the date of Mr. Kamin's deposition, I am not opposed to having a procedure implemented to search our clients' respective emails using keywords.  However, I cannot agree that a professional needs to be hired to do this for my client, as such an agreement would unnecessarily incur fees for Mr. Kamin to hire such a professional when I can run the search myself if Mr. Kamin provides me his login credentials.  As to your clients, I have no objection if they want to hire a professional to run the procedure on their emails.

   Finally, we acknowledge that Ms. Gunkova has made multiple, unilateral changes to BNG, notwithstanding Mr. Kamin's rights as a 50% member and co-manager.  For example, Ms. Gunkova recently entered into a Lease with Sterling Dental without Mr. Kamin's approval, and specifically ignoring his concerns as stated in my letter dated November 1.  Notwithstanding his requests, Mr. Kamin still has not been advised as to who drafted the Lease, who handled the negotiations with Sterling Dental, and what the anticipated Building Improvements as referenced in Section 35 of that Lease are, nor has Mr. Kamin received any bids, contracts, or proposals for those anticipated costs to BNG that appear from the Lease terms to total over $300,000.

   Mr. Kamin reserves all rights on these issues. Notably, Judge Irby recognized Mr. Kamin's rights in her ruling on October 15, 2021, stating:

> The operating agreement that Ms. Gunkova is operating under also invests in the board of managers, which by necessity, would include the parties since the board is comprised of two members who received the highest number of votes from the membership, and there's only two members of the parties, all the authority over the operation of BNG. Since the defendant necessarily requires the plaintiff to show then majority before The Court, it does seem that the defendant is effectively obligated with respect to the operation agreement to seek Plaintiff's approval before taking any action on behalf of BNG.

(Tr. 31:13-32:3).

*********************

   I look forward to continuing to work with you in this case and hope that no further motions practice will be necessary to resolve the existing discovery disputes.

        Sincerely,

        Bethany Benes

Enclosures: a/s



**BETHUNE
BENES**

**Bethany Benes**
**Attorney at Law**
(703) 260-9325 Direct
bbenes@bethunebenes.com

December 8, 2021

**VIA EMAIL ONLY**
Jay McDannell, Esq.
jmcdannell@berliklaw.com

*Re: Kamin v. Gunkova;* **Case No. CL-21-1557**

Dear Mr. McDannell:

This letter responds to your email of December 3 and follows up to my prior letters of October 6, November 1, November 1, and November 18, 2021. While I understand that there are many issues that remain pending, and that it may be easier for you to respond to only some issues by email, I kindly request that you respond to <u>all</u> issues addressed in my prior letters and this one so that these issues may be resolved and not continue to drag on. I appreciate your attention to these matters.

First, it appears my prior letter of November 18 in which I indicated, "My first letter to you was dated October 6, and yet we have received no supplementation, nor any indication as to when we can expect such supplementation" was not as clear as it could have been. I agree that your client provided additional documents after October 6. However, my prior notation references the fact that the documents provided did not resolve the deficiencies noted in my October 6 letter. I am in receipt of your email late last night and the documents forwarded bates labeled GUNKOVA_006699-6838. <u>Please advise if you contend that all prior noted deficiencies have been resolved with your latest production. If not, please advise as to when you will be supplementing Ms. Gunkova's responses to resolve all deficiencies set forth in my prior letters.</u>

Next, Ms. Gunkova recently entered into numerous leases with future tenants, namely Sterling Dental and Effective Management Solutions, without Mr. Kamin's approval, and specifically ignoring his concerns as stated in my letter dated November 1. Notwithstanding his requests, Mr. Kamin still has not been advised as to what the anticipated Building Improvements are as referenced in Section 35 in the respective leases, nor has Mr. Kamin received any bids, contracts, or proposals for those anticipated costs to BNG.

Third, Mr. Kamin rejects your characterization of his participation at the Members Meeting. As you know, Ms. Gunkova called the meeting on her own and did not even provide Mr. Kamin will all documents prior to the meeting that were necessary for an informed discussion to take place. Instead, Ms. Gunkova picked certain documents to provide to Mr.

Jay McDannell, Esq.
December 8, 2021
Page 2 of 4

Kamin before the meeting and then other documents at the meeting, while still omitting key financial documents. For example, Ms. Gunkova disclosed a proposal dated November 9, 2021, from "bank five nine", while omitting four other proposals that were mentioned by Ms. Gunkova at the meeting. To date, Mr. Kamin does not have the relevant information about the other proposals, including the name of the banks, the financials submitted to obtain the proposal, etc. To ensure that Mr. Kamin's requests for such information as expressed at the meeting are understood, please provide <u>all</u> documentation and information. Mr. Kamin cannot make reasonable business decisions without full and complete information.

Fourth, as stated in my prior correspondence and as stated at the meeting, Mr. Kamin rejects the "BNG Group LLC Financial and Operational Management Policy and Procedures" document unilaterally implemented by Ms. Gunkova after the October 2021 hearing. Specifically:

1. Mr. Kamin does not agree that Ms. Gunkova is the "President" of BNG;

2. Mr. Kamin does not agree that BNG's operations rest solely with Ms. Gunkova or that Ms. Gunkova has unfettered authority to act on behalf of BNG without Mr. Kamin's approval[1];

3. Mr. Kamin does not agree that BNG provides services related to Skin Logic LLC assets allegedly owned by BNG;

4. Mr. Kamin does not agree that BNG entered into valid loan agreements with Skin Logic LLC;

5. Mr. Kamin does not agree that Ms. Gunkova has authority to enter into fixed price contracts on behalf of BNG Group up to a dollar limit of $25,000 without the approval of Mr. Kamin;

6. Mr. Kamin does not agree that Ms. Gunkova has have unilateral authority to spend, contract, and/or incur expenses on behalf of BNG with regards to new tenant leases;

7. Mr. Kamin does not agree that Ms. Gunkova has the authority to hire employees and retain contractors or professionals without Mr. Kamin's approval;

8. Mr. Kamin does not agree that Ms. Gunkova has the authority to spend up to $2,500 per month on salary and/or expense reimbursement to herself for expenses related to her alleged duties;

---

[1] Mr. Kamin's position was recognized by Judge Irby's ruling of October 14, 2021, when she noted, "...it does seem that the defendant is effectively obligated with respect to the operation agreement to seek Plaintiff's approval before taking any action on behalf of BNG."

Jay McDannell, Esq.
December 8, 2021
Page 3 of 4

9. Mr. Kamin does not agree that Ms. Gunkova has the authority to spend up to $1000 per month on salary and expenses for a Bookkeeper (for whom we assume this refers to Mr. Bogatin) without Mr. Kamin's approval;

10. Mr. Kamin does not agree to the "petty cash" policy authorizing BNG Group maintain a petty cash fund of $500 or that any amounts owed by BNG are paid by cash;

11. Mr. Kamin does not agree to have further financial accounts set up in the name of BNG other than those that already exist;

12. Mr. Kamin does not agree that Ms. Gunkova has spending and signing authority and can partially or totally delegate same to Property Manager to:
    a. Procure services through requisitions, check requests, or credit card services.
    b. Sign contracts and change orders for an authorized amount.
    c. Sign checks.

13. Mr. Kamin does not agree that Ms. Gunkova may make company credit cards available to employees without Mr. Kamin's approval; and

14. Mr. Kamin has not seen the "Travel and Training Policy" as referenced on p. 10, and therefore rejects any terms related to such alleged policy.

Finally, by way of my November 11 letter, Mr. Kamin requested that all outstanding litigation issues be addressed as "other business" at the meeting. Mr. Kamin's request was not accepted by Ms. Gunkova, as it was repeatedly stated in the meeting by both you and your clients that the meeting was not for litigation purposes. Mr. Kamin's attempt to have his computer expert review and pull the relevant BNG electronic files was also rejected by you. Nevertheless, Mr. Kamin was provided with a document entitled "OTHER BUSINESS – Resolution of Member Litigation" for the first time at the meeting by Ms. Gunkova, which outlined various settlement proposals related to the litigation. After reviewing the various proposals, Mr. Kamin requests the following for a more thorough consideration of how each proposal may successfully resolve the issues between our clients:

1. Please advise as to the current status of the SBA loan received by BNG. Has the loan been repaid or forgiven?

2. Please advise as to how the proposed purchase price of $2.7 million was calculated.

As I have stated to you many times, I always encourage settlement, and my practice has not changed with regards to this case. I will repeat what I have stated before – if we can amicably settle this case, it will be in everyone's best interest as opposed to waiting two years for a trial in this matter (and a judgment that will likely be appealed by the non-prevailing party). At this

Jay McDannell, Esq.
December 8, 2021
Page 4 of 4

time, however, Mr. Kamin needs more information to be able to consider the proposals and take the next step in responding.

I look forward to continuing to work with you in this case and receiving all outstanding information and documentation.

Sincerely,

Bethany Benes



**Bethany Benes**
**Attorney at Law**
(703) 260-9325 Direct
bbenes@bethunebenes.com

December 13, 2021

**VIA EMAIL ONLY**
Jay McDannell, Esq.
[jmcdannell@berliklaw.com](mailto:jmcdannell@berliklaw.com)

*Re: Kamin v. Gunkova;* **Case No. CL-21-1557**

Dear Mr. McDannell:

This letter follows up to my five prior letters attempting to resolve Ms. Gunkova's discovery deficiencies and her failures to produce the information requested by Mr. Kamin as a member of BNG Group, LLC.  Mr. Kamin has been more than reasonable and accommodating in waiting for Ms. Gunkova to fully respond.  Nevertheless, Ms. Gunkova continues to pick and choose what she will respond to, fails to comply with the Rules of the Virginia Supreme Court, and disregards Mr. Kamin's rights as a member of BNG.  Please note that this letter is Mr. Kamin's final attempt to resolve Ms. Gunkova's persisting deficiencies without the need for motions practice.  If these matters are not resolved in full by 12 pm on December 17, 2021, Mr. Kamin will file the necessary motions with the Court and will request that the matter be heard on January 7, 2022.

**1. Discovery Deficiencies**

I am in receipt of an email in which you requested an extension to produce your client's documents in response to Mr. Kamin's 4th Requests by December 10, 2021. I subsequently received a production from you after 11 pm on December 7, 2021.  I did not receive any response to my requests to clarify whether your client's December 7 production was complete or if you intended to produce additional documents per your prior request for extension, nor did I receive any additional production on December 10, 2021. The following deficiencies remain with regards to Ms. Gunkova's discovery responses:

(i)     Interrogatories:

    a.  Ms. Gunkova identified a number of individuals in her deposition that were not included in her responses to Interrogatory No. 2 of Mr. Kamin's 1st Set of Interrogatories.  To date, we have not received the identities and contact information for the following:

        i.  Unidentified male witness at document signing on third day of Mr. Kamin's October 2020 visit;

    ii.  Ms. Gunkova's mother, Natalia Gorbunova;

    iii.  the mother-in-law of Farrukh Kuchakov, Ludmila; and

    iv.  Matthew Harris;

b.  Ms. Gunkova's response to Interrogatory No. 19 does not properly identify by bates number the documents for which she directs Mr. Kamin pursuant to Va. Sup. Ct. R. 4:8(f);

c.  Ms. Gunkova's response to Interrogatory No. 20 does not properly identify by bates number the documents for which she directs Mr. Kamin pursuant to Va. Sup. Ct. R. 4:8(f);

d.  Ms. Gunkova's response to Interrogatory No. 21 is nonresponsive and does not comply with Va. Sup. Ct. R. 4:8(e) that specifies, "Interrogatories may relate to any matters which can be inquired into under Rule 4:1(b)";

e.  Ms. Gunkova's response to Interrogatory No. 22 is nonresponsive and does not comply with Va. Sup. Ct. R. 4:8(e) that specifies, "Interrogatories may relate to any matters which can be inquired into under Rule 4:1(b)";

f.  Ms. Gunkova's response to Interrogatory No. 23 does not properly identify by bates number the documents for which she directs Mr. Kamin pursuant to Va. Sup. Ct. R. 4:8(f).  In an effort to resolve your stated objections, Mr. Kamin is agreeable to narrowing No. 23 to include the italicized language as follows, "Identify each occurrence of maintenance, repair, and/or servicing by BNG of built-in specialty equipment, software, built-in furniture, and/or fixtures located at the Property *performed pursuant to the Contract for Services (produced as GUNKOVA 006643- 6645)* from September 2019 to the present, including the identity of the professional who conducted the services and each expense incurred as a result of such services performed.";

g.  Ms. Gunkova's response to Interrogatory No. 24 does not properly identify by bates number the documents for which she directs Mr. Kamin pursuant to Va. Sup. Ct. R. 4:8(f);

h.  Ms. Gunkova's response to Interrogatory No. 25 does not properly identify by bates number the documents for which she directs Mr. Kamin pursuant to Va. Sup. Ct. R. 4:8(f);

i.  Ms. Gunkova's response to Interrogatory No. 26 does not properly identify by bates number the documents for which she directs Mr. Kamin pursuant to Va. Sup. Ct. R. 4:8(f);

Jay McDannell, Esq.
December 13, 2021
Page 3 of 6

(ii)   <u>Requests</u>:

    a.  My September 20 letter requested the (i) identity of Ms. Gunkova's former expert and any documents related to such expert in response to Request No. 24 and (ii) a proper identification by specific bates label of the documents Ms. Gunkova contends are specifically responsive to Request No. 55. To date, I have not received any information.  Please advise as to where you stand on your positions with producing such information so that we may proceed accordingly;

    b.  Ms. Gunkova testified at her deposition about the following documents that are responsive to Mr. Kamin's discovery requests but have not yet been produced by Ms. Gunkova.  For your convenience, I have included the Request that seeks each in parenthesis.

        i.  Invoices related to services provided for the benefit of Mr. Kamin and applied as distributions to Mr. Kamin for the tax year 2020 (Request No. 7);

        ii.  Documents evidencing the monies allegedly contributed by Ms. Gunkova personally to BNG, including contributions made by check, wire transfer, and cash (Request No. 7);

        iii.  Financial documents related to expenses paid for Aria Medi Spa (Request Nos. 7, 24, 25);

        iv.  Documents and communications related to SBA loans obtained by BNG and/or using BNG information, including any SBA loans obtained by Sterling Investments, LLC and/or Skin Logic LLC d/b/a Aria Medi Spa using BNG financial information (Request No. 7);

        v.  Documents related to payments made to notary public Kirk Hilliard relating to BNG and/or Mr. Kamin, including invoices, proof of payment, and receipts for services rendered (Request No. 60);

    c.  The Quickbooks files produced as GUNKOVA_006702-6704 is cut off and therefore incomplete;

    d.  Ms. Gunkova's response to Request No. 69 does not properly identify by bates number the documents for which she directs Mr. Kamin pursuant to Va. Sup. Ct. R. 4:9(b)(ii) and (iii);

    e.  Ms. Gunkova's response to Request No. 70 does not properly identify by bates number the documents for which she directs Mr. Kamin pursuant to Va. Sup. Ct. R. 4:9(b)(ii) and (iii);

Jay McDannell, Esq.
December 13, 2021
Page 4 of 6

     f.   Ms. Gunkova's responses to Request Nos. 74-76, 81-83, and 87 are nonresponsive and do not comply with Va. Sup. Ct. R. 4:9(a) that specifies, "Any party may serve on any other party a request...to produce... [documents] which are in the possession, custody, or control of the party upon whom the request is served." As the sole member of Skin Logic, LLC, the documents requested in Request Nos. 74-76, 81-83, and 87 are within the possession, custody, or control of Ms. Gunkova and therefore were properly propounded to Ms. Gunkova;

     g.   Ms. Gunkova's response to Request No. 77 does not properly identify by bates number the documents for which she directs Mr. Kamin pursuant to Va. Sup. Ct. R. 4:9(b)(ii) and (iii);

     h.   Ms. Gunkova's response to Request No. 78 does not properly identify by bates number the documents for which she directs Mr. Kamin pursuant to Va. Sup. Ct. R. 4:9(b)(ii) and (iii);

     i.   Ms. Gunkova's response to Request No. 79 does not properly identify by bates number the documents for which she directs Mr. Kamin pursuant to Va. Sup. Ct. R. 4:9(b)(ii) and (iii);

     j.   Ms. Gunkova's response to Request No. 80 does not properly identify by bates number the documents for which she directs Mr. Kamin pursuant to Va. Sup. Ct. R. 4:9(b)(ii) and (iii); and

     k.   Ms. Gunkova's response to Request No. 85 does not properly identify by bates number the documents for which she directs Mr. Kamin pursuant to Va. Sup. Ct. R. 4:9(b)(ii) and (iii);

## 2.  Outstanding Member Requests of Mr. Kamin

Each of the following have been addressed in my prior communications with regards to information requested by Mr. Kamin as a member of the Company. To date, we have not received a response or resolution and the issues remain.

(i)   <u>Email accounts</u>: My letter dated November 1, 2021 (and again on November 11), included the following:

"Mr. Kamin is aware of the following email accounts that have been created by and/or used by Ms. Gunkova and/or Mr. Bogatin: harry@bnggroupllc.com ; harry@ariamedispa.com; and grishak301@gmail.com. Please provide all relevant information related to the credentials for each account, including the web address to access the account, username, and password. Please also advise if there are any other email addresses that have been created by and/or used by Ms. Gunkova and/or Mr. Bogatin for Mr. Kamin, and if so, provide the credentials for each.

Jay McDannell, Esq.
December 13, 2021
Page 5 of 6

As you are aware, Mr. Kamin rejects Mr. Bogatin's previously stated position that
Mr. Bogatin had authority to act on behalf of Mr. Kamin, including to create
and/or use any accounts on behalf of Mr. Kamin. To make it further clear, Mr.
Kamin does not authorize Mr. Bogatin and/or Ms. Gunkova to create and/or use
any email account on behalf of Mr. Kamin. Please confirm that your clients will
cease all use of the relevant email accounts purportedly belonging to Mr. Kamin."

I am in receipt of a response from you that the email account
harry@bnggroupllc.com was never activated or used, and Mr. Kamin accepts that
representation from you notwithstanding that documents that contradict that
position were produced in this litigation. However, to date, the login information
requested for harry@ariamedispa.com and grishak301@gmail.com has still not
been provided. Please provide the credentials immediately.

(ii)   Inspection of BNG Records: As you are aware, Mr. Kamin's computer expert
accompanied Mr. Kamin to the member's meeting on December 1, 2021, at which time
Mr. Kamin requested that his expert be permitted to review and inspect BNG's
computer(s) and electronic files. You denied Mr. Kamin's request and represented that
you would provide alternative dates for inspection. After not hearing from you regarding
this issue, I emailed you on December 10, 2021, to again inquire about available dates. I
have not received a response to Mr. Kamin's original request or my follow-up email.
Please let us know Ms. Gunkova's availability this week to accomplish this inspection.

(iii)  Leases: Ms. Gunkova recently entered into numerous leases with future tenants, namely
Sterling Dental and Effective Management Solutions, without Mr. Kamin's approval, and
specifically ignoring his concerns as stated in my letter dated November 1. Mr. Kamin
was informed at the members meeting that Legat handled the negotiations of the leases.
However, Mr. Kamin has not been advised as to how much BNG is now obligated to pay
to Legat for such services, nor did Mr. Kamin approve such expenses being incurred.
Please provide all information relating to Legat's involvement and charges in the lease
negotiation process for BNG.

Additionally, Ms. Gunkova proceeded and unilaterally obligated BNG to provide
building improvements to these tenants totaling over $600,000 over Mr. Kamin's
objections. On December 10, 2021, Ms. Gunkova emailed Mr. Kamin a copy of
architectural drawings from Bayview Architectural Group and what she referred to as a
"proposal" from Q Construction Inc. related to the space leased to Sterling Dental. Ms.
Gunkova also informed Mr. Kamin that she has "verbal proposals from Dargo
Construction Inc and others but need additional details before thoroughly evaluating
these proposals." No financial information has been provided to Mr. Kamin related to
Bayview's services, and while the "proposal" from Q Construction enumerates a number
of improvements to be made, the "proposal" lacks any itemization of costs for each
improvement. Ms. Gunkova has not provided Mr. Kamin any details of the Dargo
Construction proposal or the "others". Furthermore, Mr. Kamin has not received any
information about the improvements for which Ms. Gunkova obligated BNG to provide
to Effective Management Solutions. Please provide all information related to BNG's

Jay McDannell, Esq.
December 13, 2021
Page 6 of 6

obligations immediately, including how Ms. Gunkova plans to pay for these improvements.

(iv)     <u>Complete Financial Information and Documentation</u>: As stated in my letter of December 8, 2021, Ms. Gunkova picked certain documents to provide to Mr. Kamin before the December 1 members meeting and then other documents at the meeting, while still omitting key financial documents.  For example, Ms. Gunkova disclosed a proposal dated November 9, 2021, from "bank five nine", while omitting four other proposals that were mentioned by Ms. Gunkova at the meeting.  To date, Mr. Kamin does not have the relevant information about the other proposals, including the name of the banks, the financials submitted to obtain the proposal, etc.  To ensure that Mr. Kamin's requests for such information as expressed at the meeting are understood, please provide <u>all</u> documentation and information.  Mr. Kamin cannot make reasonable business decisions without full and complete information.

(v)     <u>SBA Information</u>: Mr. Kamin repeats his request for information about the status of BNG's SBA loan: Please advise as to the current status of the SBA loan received by BNG.  Has the loan been repaid or forgiven?

*******************************

Thank you in advance for your prompt attention to these issues.  I look forward to continuing to work with you and remain hopeful that we can reach an amicable resolution to these issues.

Sincerely,

Bethany Benes



**Bethany Benes**
**Attorney at Law**
(703) 260-9325 Direct
bbenes@bethunebenes.com

January 31, 2022

**VIA EMAIL ONLY**
Jay McDannell, Esq.
jmcdannell@berliklaw.com

*Re: Kamin v. Gunkova;* **Case No. CL-21-1557**

Dear Mr. McDannell:

This letter responds to the email sent by your client, Valeria Gunkova, dated January 27, 2022, and entitled, "Subject: Capital Contribution Call for BNG Group, LLC", in which Ms. Gunkova attempted to issue a capital call requiring Mr. Kamin to contribute $200,000 to BNG Group, LLC within ten (10) days.  Mr. Kamin rejects your client's improper attempt for the following reasons:

1.    **The Amended and Restated Operating Agreement dated October 29, 2021 is a Fraudulent Document.**

Your client indicated in her email that her issuance of a capital call is based on "the Amended and Restated Operating Agreement of BNG Group, LLC, Article V 'Funding,' 'Financial Contributions,' Subsection (a)".  Assuming that your client is referring to the Amended and Restated Operating Agreement dated October 29, 2021, and produced by Ms. Gunkova in litigation beginning at GUNKOVA_00036, your client is well aware that this document is a fraudulent document and was never agreed to by Mr. Kamin.  Specifically, as concluded by forensic expert Kristen Welch, Mr. Kamin's signature on the document is a duplicate signature and therefore not an authentic signature.  It is believed that your client and/or her agent, Mr. Jacob Bogatin, fabricated Mr. Kamin's signature and applied it digitally to this document to appear as though it were signed by Mr. Kamin.   As a result, any attempt to issue a capital call pursuant to this forged document fails.

2.    **Ms. Gunkova's Intended Capital Call is Invalid Pursuant to the Parties' Agreement.**

Ms. Gunkova testified at the October injunction hearing that she was aware that she was required to produce the current version of BNG's Operating Agreement to Atlantic Union Bank for the closing on the loan for the Property. As I am sure you are aware, Ms. Gunkova did not submit any of the documents Ms. Gunkova contends were signed by Mr. Kamin on October 29, 2021 to Atlantic Union Bank, including the alleged Amended and Restated Operating Agreement

Jay McDannell, Esq.
January 31, 2022
Page 2 of 3

of BNG Group, LLC dated the same. Instead, Ms. Gunkova admitted in her injunction testimony that she submitted the February 20, 2020 Operating Agreement to Atlantic Union Bank to obtain finding for the property loan.  While Mr. Kamin agrees that he did not personally sign the February 2020 Operating Agreement, Mr. Kamin acknowledges that the terms are consistent with the parties' agreement.  Furthermore, Ms. Gunkova contends that Mr. Bogatin signed it on behalf of Mr. Kamin with authority to do so. The terms of the parties' agreements with regards to their membership in BNG are therefore set forth in the Limited Liability Company Operating Agreement of BNG Group, LLC dated February 20, 2020.

Section 3.6 of the Limited Liability Company Operating Agreement of BNG Group, LLC dated February 20, 2020 establishes the process by which additional capital contributions may be required:

"If, pursuant to Section V of this Agreement, the Board of Managers determines, by a majority vote of the Managers, that the Company requires additional Capital Contributions, then each Member shall contribute his or her share of additional Capital Contributions;...Except as set forth above, no Member shall be required to contribute any additional capital to the Company."

Numerous provisions of Section V make it clear that the "Board of Managers" consists of at least 2 members. The Court recognized this in its ruling on October 15, finding:

The operating agreement that Ms. Gunkova is operating under also invests in the board of managers, which by necessity, would include the parties since the board is comprised of two members who received the highest number of votes from the membership, and there's only two members of the parties, all the authority over the operation of BNG. Since the defendant necessarily requires the plaintiff to show then majority before The Court, it does seem that the defendant is effectively obligated with respect to the operation agreement to seek Plaintiff's approval before taking any action on behalf of BNG.

(Tr. 31:13-32:3).

Ms. Gunkova admitted in her injunction testimony that the February 2020 Operating Agreement as well as documents signed and submitted by Ms. Gunkova to Atlantic Union Bank evidence that Mr. Kamin and Ms. Gunkova are each a 50% Class A members and Co-Manager of BNG.  Mr. Kamin is unaware of any "vote" regarding a capital call, nor does Mr. Kamin agree with Ms. Gunkova's apparent request for a capital call. Accordingly, Ms. Gunkova's attempt to issue a unilateral capital call fails and her intended capital call is invalid.

3.    **Ms. Gunkova Continues to Harm the Company Through Her Unilateral Actions.**

Notwithstanding that Mr. Kamin is a 50% Class A member and co-Manager of BNG, Ms. Gunkova continues to operate BNG as if she is the sole member.  Ms. Gunkova continues to obligate BNG to certain expenditures, including those set forth in recent leases entered into by

Jay McDannell, Esq.
January 31, 2022
Page 3 of 3

Ms. Gunkova on behalf of BNG over Mr. Kamin's objections. As stated in my prior letters of November 1, 2021, November 18, 2021, and December 13, 2021, Ms. Gunkova proceeded without Mr. Kamin's approval, and specifically ignoring his concerns, to obligate BNG to provide building improvements totaling over $600,000 to Sterling Dental and Effective Management Solutions. Mr. Kamin has made numerous requests for information relating to these obligations (see my letters of November 1, 2021, November 18, 2021, and December 13, 2021), all of which have been ignored to date by Ms. Gunkova. Instead, Ms. Gunkova presses on and continues to obligate BNG to expenses that it does not have funds to satisfy. Ms. Gunkova's continued misconduct is further illustration of her breach of fiduciary duties. Mr. Kamin continues to reserve all rights, including any and all legal action should Ms. Gunkova now attempt to concoct a default of Mr. Kamin under her flawed approach to issue an improper capital call to cover obligations that she unilaterally created.

Sincerely,

Bethany Benes



**Bethany Benes**
**Attorney at Law**
(703) 260-9325 Direct
bbenes@bethunebenes.com

March 29, 2022

**VIA EMAIL ONLY**
Jay McDannell, Esq.
jmcdannell@berliklaw.com

   *Re: Kamin v. Gunkova; Case No. CL-21-1557*

Dear Mr. McDannell:

   This letter follows up to my no less than six prior letters attempting to resolve Ms. Gunkova's persistent disregard for Mr. Kamin's requests for information as a member of BNG Group, LLC and respond to Ms. Gunkova's recent correspondence.  The majority of the following has been addressed in my prior communications, yet we have not received a response or resolution to date. Mr. Kamin reserves all rights with regards to Ms. Gunkova's continuous misconduct.

**1.  Stryker Services:**

   Please advise as to the status of the negotiations and payment to Stryker Services.  Please advise as to what amount was paid and confirm that the account has been paid in full.

**2.  Loan Proposals:**

   As stated in my letters of December 8, 2021 and December 13, 2021, Ms. Gunkova picked certain documents to provide to Mr. Kamin before the December 1 members meeting and then other documents at the meeting, while still omitting key financial documents.  Ms. Gunkova disclosed a proposal dated November 9, 2021, from "bank five nine", while omitting four other proposals that were mentioned by Ms. Gunkova at the meeting.  To date, Mr. Kamin does not have the relevant information about the other proposals, including the name of the banks, the financials submitted to obtain the proposal, etc.   Please provide all documentation and information.  Mr. Kamin cannot make reasonable business decisions without full and complete information.

**3.  Financial Information and Documentation:**

   Contrary to your representation on November 3, 2021, the financial accounts of BNG have changed since the October 13 injunction hearing.  Specifically, Mr. Kamin's access has been removed to the account held at TD Bank ending in 6762.  Please provide Mr. Kamin full

Jay McDannell, Esq.
March 29, 2022
Page 2 of 5

and immediate access to TD Bank account ending in 6762.  Furthermore, Ms. Gunkova has obtained an American Express credit card in the name of BNG that appears to be being used by Mr. Bogatin.  Mr. Kamin does not approve of the new account and does not authorize Mr. Bogatin to use Company credit cards, as Mr. Bogatin has more than forty felony charges pending with the United States government including financial crimes.  Please also provide all backup invoices for the charges made by Mr. Bogatin on the American Express credit card.

**4.      SBA Information:**

Mr. Kamin has repeatedly requested information about the status of what he believed to be BNG's only SBA loan and has received no answer from Ms. Gunkova.  Mr. Kamin has now discovered through a Subpoena response from GR Tax that BNG noted <u>three</u> SBA loans on its 2020 tax returns (see GRTAX 130).  Mr. Kamin demands answers to his very simple questions:

(i)      Identify each bank that provided an SBA loan to BNG, including the loans referred to on the Company tax returns as "SBA Loan 8003", "SBA Loan 8202", and "SBA Loan 7907".

(ii)     What is the current status of the SBA loans received by BNG i.e., have the loans been repaid or forgiven?

**5.      Proposed Sale of the Property:**

It has come to Mr. Kamin's attention that Ms. Gunkova is engaging in efforts to market the Property for sale.  Specifically, on February 25, 2021, I was informed by email from you that a "third-party" was interested in purchasing the Property.  By email from me on the same date and again on February 28, 2022, Mr. Kamin requested all information known regarding the potential buyer, including the identity of the third-party, the proposed terms, and documents and communications exchanged.   Unbeknownst to Mr. Kamin at the time, and not revealed in any of your email communications to me, Ms. Gunkova had already entered into a Confidentiality Agreement with Montecito Medical Operating Company, LLC on February 24, 2022. Ms. Gunkova failed to reveal this information to Mr. Kamin until March 7, 2022, all while continuing to refuse to answer Mr. Kamin's questions and provide the documents and communications up to that point.

Ms. Gunkova also failed to inform Mr. Kamin that she was in communications with a second potential buyer, Sands Investment Group.  Instead, I was contacted by Sands Investment Group directly, who informed me that they "recently spoke with Mr. Jacob who informed us that given everything that is happening around the world and locally Mr. Kamin is interested in selling this location."  **<u>Mr. Kamin has made it clear on many occasions that Ms. Gunkova and/or Mr. Bogatin do NOT have authority to speak for Mr. Kamin</u>**.  As evidenced by Sands Investment's email, Mr. Bogatin continues to impersonate himself as an authorized agent for Mr. Kamin.  Mr. Kamin demands that Mr. Bogatin immediately cease and desist his fraudulent actions and reserves the right to address Mr. Bogatin's crimes with law enforcement.

Jay McDannell, Esq.
March 29, 2022
Page 3 of 5

As a result of Ms. Gunkova's refusals to keep Mr. Kamin adequately informed and provide all information requested by Mr. Kamin, Mr. Kamin does not agree to market or sell the Property at this time and demands that all such efforts by Ms. Gunkova cease. Please produce all communications and documents exchanged with any potential buyer to date, including Sands Investment Group and Montecito Medical.

**6.** **Sterling Dental and Effective Management Solutions Leases:**

As you are aware from my letters dated November 1, 2021, December 13, 2021, and December 17, 2021, Mr. Kamin objected to the Lease proposed by Ms. Gunkova from BNG to Sterling Dental. Mr. Kamin expressly objected to the Building Improvements proposed by Ms. Gunkova in Section 35 of the Lease. Notwithstanding Mr. Kamin's objections, Ms. Gunkova unilaterally entered into the Lease on behalf of BNG with Sterling Dental. Mr. Kamin similarly objected to the proposed lease of Effective Management Solutions. Nevertheless, Ms. Gunkova again usurped Mr. Kamin's voting power and entered into the Lease with Effective Management Solutions.

Mr. Kamin was informed at the members meeting that Legat handled the negotiations of the leases. A document produced by Ms. Gunkova just last month also indicates that BNG entered into a Commission Agreement with The Charles L. Feitel Company, LLC dba Health-Pro Realty Group. To date, no contract for services with Legat has been provided for such negotiations, nor has the Commission Agreement with Health Pro-Realty Group been provided to Mr. Kamin. Although Mr. Kamin received an invoice totaling over $11,000 that appears to be for Legat, Mr. Kamin has not been fully advised as to how much BNG is now obligated to pay to Legat and/or Health Pro Realty Group for such services, nor did Mr. Kamin approve such expenses being incurred. Please provide all information relating to Legat's and Health Pro Realty Group's involvement and charges in the lease negotiation process for BNG, including the contracts, invoices, payments, and communications.

Additionally, Ms. Gunkova proceeded and unilaterally obligated BNG to provide building improvements to these tenants totaling over $600,000 over Mr. Kamin's objections. On December 10, 2021, Ms. Gunkova emailed Mr. Kamin a copy of architectural drawings from Bayview Architectural Group and what she referred to as a "proposal" from Q Construction Inc. related to the space leased to Sterling Dental. Ms. Gunkova also informed Mr. Kamin that she has "verbal proposals from Dargo Construction Inc and others but need additional details before thoroughly evaluating these proposals." No financial information has been provided to Mr. Kamin related to Bayview's services, and while the "proposal" from Q Construction enumerates a number of improvements to be made, the "proposal" lacks any itemization of costs for each improvement. While it appears that checks have been issued to Dargo Construction, Ms. Gunkova has not provided Mr. Kamin any details of the Dargo Construction proposal or the "others" to Mr. Kamin. Mr. Kamin expressly rejects any and all charges that Ms. Gunkova has unilaterally obligated BNG. Please provide all information related to BNG's obligations immediately, including the Dargo proposal, contract, invoices, and communications.

Jay McDannell, Esq.
March 29, 2022
Page 4 of 5

**7.      Jackson Clinic Early Termination:**

Mr. Kamin has been advised by Ms. Gunkova's monthly updates that Jackson Clinic intends to terminate its lease effective March 2023.   After re-reviewing the documents produced beginning at GUNKOVA 334, it appears that Mr. Kamin has not been provided with a copy of the Lease with Jackson Clinic.  Please forward that to me for Mr. Kamin's review.  Additionally, please advise as to who is handling Jackson Clinic's request, including whether an attorney has been hired to render legal advice to BNG, and the status of the request.

**8.      Elevator Repairs:**

Ms. Gunkova is well-aware from Mr. Kamin's claims pending in the Loudoun County Circuit Court that Mr. Kamin does not agree with Ms. Gunkova's spending of BNG funds, including misappropriation of funds to Ms. Gunkova and her other company, Skin Logic LLC.  It has come to Mr. Kamin's attention that Ms. Gunkova continues to spend without Mr. Kamin's approval.  Ms. Gunkova recently informed Mr. Kamin that the building has been "experiencing new and serious problems with the elevators in the building" and that Century Elevator company informed Ms. Gunkova that 'the elevators are at the end of their lifecycle and must be replaced in the near future."  Ms. Gunkova provided a quote showing a replacement cost of $525,000.  Ms. Gunkova also indicated that she was talking with "other vendors" about the issue.  To date, Mr. Kamin has not received any inspection reports from Century Elevator or any "other vendors".  Please produce all inspection reports, invoices, contracts, proposals, and communications relating to the elevator issue allegedly being experienced at the Property.   Please note that Mr. Kamin does not approve the $525,000 proposal at this time, or any other proposal that he has not even seen, as he is not fully informed as to whether a full replacement is a necessary expense to be incurred.  Mr. Kamin looks forward to receiving all information about the alleged issue that he can determine what, if anything, needs to be done to ensure the elevator is in proper working order.

**9.      Email Accounts**:

I understand that you represent that the login information known to your clients is no longer applicable.  This fact does not moot Mr. Kamin's request for such information.  To date, we have not received the last-known login credentials for the email accounts created by and/or used by Ms. Gunkova and/or Mr. Bogatin including harry@bnggroupllc.com ; harry@ariamedispa.com; and grishak301@gmail.com.

**10.      Inspection of BNG Records**:

It has been nearly four months since Mr. Kamin requested access for his computer expert to review and inspect BNG's computer(s) and electronic files at the members meeting on December 1, 2021.  You denied Mr. Kamin's request and represented that you would provide alternative dates for inspection.  After not hearing from you regarding this issue, I emailed you on December 10, 2021, to again inquire about available dates, and again repeated Mr. Kamin's request in my December 13 letter.  You continued to fail to respond, and Mr. Kamin included the request in his Third Motion for Contempt filed with the Loudoun County Circuit Court. Other

Jay McDannell, Esq.
March 29, 2022
Page 5 of 5

than opposing the request in the discovery motion before the Court on the basis that the written discovery request did not include a forensic inspection of the computer, I have not received a response to Mr. Kamin's original request or my follow-up communications.  Please confirm that Ms. Gunkova is rejecting Mr. Kamin's request for inspection so that we may proceed as we see necessary.

***********************

Mr. Kamin as a Member of BNG has express rights pursuant to Va. Code § 13.1-1028.  I look forward to promptly hearing from you and/or your client with regards to the questions and documents requested in this communication.


Sincerely,

Bethany Benes



**Bethany Benes**
**Attorney at Law**
(703) 260-9325 Direct
bbenes@bethunebenes.com

April 25, 2022

<u>**VIA EMAIL ONLY**</u>
Jay McDannell, Esq.
jmcdannell@berliklaw.com

 *Re: Kamin v. Gunkova;* **Case No. CL-21-1557**

Dear Mr. McDannell:

 Nearly a month has gone by, and I have not received a full response from you to my letter dated March 29, 2022. In fact, the only response I have received from you was an email dated April 8 in which you addressed "one specific issue" from my March 29, 2022 letter and refuted the third-party notices that have been made to Mr. Kamin that Mr. Bogatin continues to make representations on behalf of Mr. Kamin. Mr. Kamin is also in receipt of Ms. Gunkova's "April report" sent by email on April 11, 2022. Similarly, Ms. Gunkova's "April report" did respond to Mr. Kamin's requests in my prior letters. This is now Mr. Kamin's seventh attempt to resolve Ms. Gunkova's willful and persistent disregard for Mr. Kamin's requests for information as a member of BNG Group, LLC, the outstanding requests of which are repeated below for your convenience.

**1. Stryker Services:**

 Please advise as to the status of the negotiations and payment to Stryker Services. Please advise as to what amount was paid and confirm that the account has been paid in full.

**2. Loan Proposals:**

 As stated in my letters of December 8, 2021 and December 13, 2021, Ms. Gunkova picked certain documents to provide to Mr. Kamin before the December 1 members meeting and then other documents at the meeting, while still omitting key financial documents. Ms. Gunkova disclosed a proposal dated November 9, 2021, from "bank five nine", while omitting four other proposals that were mentioned by Ms. Gunkova at the meeting. To date, Mr. Kamin does not have the relevant information about the other proposals, including the name of the banks, the financials submitted to obtain the proposal, etc. Please provide <u>all</u> documentation and information. Mr. Kamin cannot make reasonable business decisions without full and complete information.

Jay McDannell, Esq.
April 25, 2022
Page 2 of 4

**3.      Financial Information and Documentation:**

Contrary to your representation on November 3, 2021, the financial accounts of BNG have changed since the October 13 injunction hearing.  Specifically, Mr. Kamin's access has been removed to the account held at TD Bank ending in 6762, and Ms. Gunkova has obtained an American Express credit card in the name of BNG that appears to be being used by Mr. Bogatin. As stated in my prior letter of March 29, 2022, Mr. Kamin does not approve of the new account and does not authorize Mr. Bogatin to use Company credit cards.  Mr. Gunkova's "April report" indicates that she continues to disregard Mr. Kamin's rights, with an invoice produced evidencing that charges continue to be incurred by Mr. Bogatin in the name of the Company as recently as April 7.  To date, Ms. Gunkova has failed to provide Mr. Kamin with full and immediate access to TD Bank account ending in 6762, nor has Ms. Gunkova produced any statements for this account and has ignored Mr. Kamin's requests for all backup invoices for the charges made by Mr. Bogatin on the American Express credit card.  Mr. Kamin demands that Ms. Gunkova rectify her deficiencies immediately and cease all activity on the American Express credit card.

An email thread between Ms. Gunkova and Atlantic Union Bank indicates that BNG filed an extension to file its tax returns for 2021.  To date, Ms. Gunkova has not advised Mr. Kamin as to the status of any tax filings made on behalf of Sterling Investments LLC.  Please provide all tax documents to Mr. Kamin and advise as to identity and contact information of the person who prepared and filed tax documents on behalf of BNG and Sterling Investments this year.

**4.      SBA Information:**

Mr. Kamin has repeatedly requested information about the status of what he believed to be BNG's only SBA loan and has received no answer from Ms. Gunkova.  Mr. Kamin has now discovered through a Subpoena response from GR Tax that BNG noted <u>three</u> SBA loans on its 2020 tax returns (see GRTAX 130).  <u>Mr. Kamin's longstanding demands for answers to his very simple questions are blatantly ignored by Ms. Gunkova</u>:

(i)      Identify each bank that provided an SBA loan to BNG, including the loans referred to on the Company tax returns as "SBA Loan 8003", "SBA Loan 8202", and "SBA Loan 7907".

(ii)      What is the current status of the SBA loans received by BNG i.e., have the loans been repaid or forgiven?

**5.      Proposed Sale of the Property:**

While Mr. Kamin appreciates your attempt to address his concern about Mr. Bogatin's continued misrepresentations speaking on behalf of Mr. Kamin to third-parties, Mr. Kamin has been advised by more than one person that such conduct by Mr. Bogatin has in fact occurred. Mr. Kamin reasonably believes the word of unbiased third parties over the "assurance" of Mr. Bogatin, who reputation for untruthfulness was not only personally experienced by Mr. Kamin, but was recognized by the United States government in its 40 counts of felony criminal fraud charges brought against Mr. Bogatin.  To date, Ms. Gunkova has failed to provide Mr. Kamin

Jay McDannell, Esq.
April 25, 2022
Page 3 of 4

with any documents and communications with Sands Investment Group, nor has Ms. Gunkova provided Mr. Kamin with all documents and communications with Montecito Medical.

**6.      Sterling Dental and Effective Management Solutions Leases:**

As you are aware from my letters dated November 1, 2021, December 13, 2021, and December 17, 2021, Mr. Kamin objected to the Lease proposed by Ms. Gunkova from BNG to Sterling Dental. Mr. Kamin expressly objected to the Building Improvements proposed by Ms. Gunkova in Section 35 of the Lease.   Notwithstanding Mr. Kamin's objections, Ms. Gunkova unilaterally entered into the Lease on behalf of BNG with Sterling Dental.   Mr. Kamin similarly objected to the proposed lease of Effective Management Solutions. Nevertheless, Ms. Gunkova again usurped Mr. Kamin's voting power and entered into the Lease with Effective Management Solutions.

Mr. Kamin was informed at the members meeting that Legat handled the negotiations of the leases. A document produced by Ms. Gunkova just last month also indicates that BNG entered into a Commission Agreement with The Charles L. Feitel Company, LLC dba Health-Pro Realty Group.   To date, no contract for services with Legat has been provided for such negotiations, nor has the Commission Agreement with Health Pro-Realty Group been provided to Mr. Kamin.  Although Mr. Kamin received an invoice totaling over $11,000 that appears to be for Legat, Mr. Kamin has not been fully advised as to how much BNG is now obligated to pay to Legat and/or Health Pro Realty Group for such services, nor did Mr. Kamin approve such expenses being incurred. Please provide all information relating to Legat's and Health Pro Realty Group's involvement and charges in the lease negotiation process for BNG, including the contracts, invoices, payments, and communications.

Additionally, Ms. Gunkova proceeded and unilaterally obligated BNG to provide building improvements to these tenants totaling over $600,000 over Mr. Kamin's objections.  On December 10, 2021, Ms. Gunkova emailed Mr. Kamin a copy of architectural drawings from Bayview Architectural Group and what she referred to as a "proposal" from Q Construction Inc. related to the space leased to Sterling Dental.  Ms. Gunkova also informed Mr. Kamin that she has "verbal proposals from Dargo Construction Inc and others but need additional details before thoroughly evaluating these proposals." No financial information has been provided to Mr. Kamin related to Bayview's services, and while the "proposal" from Q Construction enumerates a number of improvements to be made, the "proposal" lacks any itemization of costs for each improvement.  While it appears that checks have been issued to Dargo Construction, Ms. Gunkova has not provided Mr. Kamin any details of the Dargo Construction proposal or the "others" to Mr. Kamin.   Mr. Kamin expressly rejects any and all charges that Ms. Gunkova has unilaterally obligated BNG.  Please provide <u>all</u> information related to BNG's obligations immediately, including the Dargo proposal, contract, invoices, and communications.

**7.      Jackson Clinic Early Termination:**

Mr. Kamin has been advised by Ms. Gunkova's monthly updates that Jackson Clinic intends to terminate its lease effective March 2023.  Ms. Gunkova's "April report" indicates that negotiations are taking place with a potential tenant referred to as "Old Dominion". Notwithstanding Mr. Kamin's requests, Ms. Gunkova has not provided Mr. Kamin with a copy

Jay McDannell, Esq.
April 25, 2022
Page 4 of 4

of the Lease with Jackson Clinic, nor has Ms. Gunkova identified who is handling the legal negotiations with Jackson Clinic or Old Dominion, and whether an attorney has been hired to render legal advice to BNG, and the status of the request.

**8.      Elevator Repairs:**

My March 29, 2022 letter advised that at this time, Mr. Kamin does not approve Ms. Gunkova's proposal for an "elevator modernization" set forth in the $525,000 proposal provided by Ms. Gunkova.  To date, Ms. Gunkova has disregarded Mr. Kamin's request for more information to determine whether a full replacement of the elevator is a necessary expense to be incurred.  Mr. Kamin has not received any inspection reports from Century Elevator or any "other vendors", including those most recently referred to in Ms. Gunkova's "April report". Please produce all inspection reports, invoices, contracts, proposals, and communications relating to the elevator issue allegedly being experienced at the Property.

On a related note, it has come to Mr. Kamin's attention that the Property's elevators present Certificates of Operation that are expired. It is imperative that the elevators obtain up to date certifications.  Please immediately advise as to what is being done, if at all, to resolve this violation.

**9.      Email Accounts**:

I understand that you represent that the login information known to your clients is no longer applicable.  This fact does not moot Mr. Kamin's request for such information.  To date, we have not received the last-known login credentials for the email accounts created by and/or used by Ms. Gunkova and/or Mr. Bogatin including harry@bnggroupllc.com ; harry@ariamedispa.com; and grishak301@gmail.com.

**10.     Inspection of BNG Records**:

To date, Ms. Gunkova, through you, has denied Mr. Kamin's request to inspect Company records and electronic devices that store Company data or are used for Company business. Mr. Kamin will proceed with filing a Motion with the Court to request the forensic inspection of all company devices and records.

***********************

Mr. Kamin as a Member of BNG has express rights pursuant to Va. Code § 13.1-1028. Please provide a response to ALL requests above within seven days of this letter. I look forward to promptly hearing from you and resolving these longstanding issues.

Sincerely,

Bethany Benes



**Bethany Benes**
**Attorney at Law**
(703) 260-9325 Direct
bbenes@bethunebenes.com

May 17, 2022

<u>**VIA EMAIL ONLY**</u>
Jay McDannell, Esq.
jmcdannell@berliklaw.com

   *Re: Kamin v. Gunkova;* **Case No. CL-21-1557**

Dear Mr. McDannell:

  This letter supplements my no less than 7 prior letters for which Mr. Kamin has not received a response from Ms. Gunkova (or a response from counsel) relating to Mr. Kamin's requests for information as a member of BNG pursuant to Va. Code § 13.1-1028.  In addition, this letter responds to Ms. Gunkova's emails sent on May 11, 2022 and May 13, 2022 (together, the "May Reports").

**1.**   **Stryker Services:**

  Please advise as to the status of the negotiations and payment to Stryker Services.  Please advise as to what amount was paid and confirm that the account has been paid in full.

**2.**   **Loan Proposals:**

  As stated in my letters of December 8, 2021 and December 13, 2021, Ms. Gunkova picked certain documents to provide to Mr. Kamin before the December 1 members meeting and then other documents at the meeting, while still omitting key financial documents.  Ms. Gunkova disclosed a proposal dated November 9, 2021, from "bank five nine", while omitting four other proposals that were mentioned by Ms. Gunkova at the meeting.  To date, Mr. Kamin does not have the relevant information about the other proposals, including the name of the banks, the financials submitted to obtain the proposal, etc.   Please provide <u>all</u> documentation and information.  Mr. Kamin cannot make reasonable business decisions without full and complete information.

**3.**   **Financial Information and Documentation:**

  Ms. Gunkova's May Report indicates that she continues to disregard Mr. Kamin's rights, with documents produced evidencing that charges continue to be incurred by Mr. Bogatin in the name of the Company as recently as April 7 on the American Express credit card for which Mr. Kamin did not authorize.  Ms. Gunkova's May Report also evidences that Ms. Gunkova

continues to spend BNG money as she so desires, including payment of her personal credit cards using BNG funds.  Mr. Kamin demands that Ms. Gunkova cease her continued misappropriation of BNG funds and provide all invoices for the credit cards paid by BNG, including the Citicard, Discover, and American Express credit cards.   Mr. Kamin further demands explanation for the $15,000 payment made from BNG's account ending in 8519 to Skin Logic.

To date, Ms. Gunkova has failed to provide Mr. Kamin with full and immediate access to TD Bank account ending in 6762, nor has Ms. Gunkova produced any statements for this account and has ignored Mr. Kamin's requests for all backup invoices for the charges made by Mr. Bogatin on the American Express credit card.  Mr. Kamin demands that Ms. Gunkova provide full access immediately.

Mr. Kamin is in receipt of the tax records of BNG sent by Ms. Gunkova, which appear to have been filed on May 2, 2022.  To date, Ms. Gunkova has failed to provide any tax records of Sterling Investments LLC as requested by Mr. Kamin.  Please provide all tax documents to Mr. Kamin.

Mr. Kamin is in receipt of payments made using BNG funds to Max Prokofyev and locksmith services.  Please advise as to what Suite the services were provided for each.

**4.      SBA Information:**

Mr. Kamin's longstanding demands for answers to his very simple questions relating to the apparent three SBA loans have been blatantly ignored by Ms. Gunkova:

(i)      Identify each bank that provided an SBA loan to BNG, including the loans referred to on the Company tax returns as "SBA Loan 8003", "SBA Loan 8202", and "SBA Loan 7907".

(ii)     What is the current status of the SBA loans received by BNG i.e., have the loans been repaid or forgiven?

If Ms. Gunkova fails to provide answers to the above questions, Mr. Kamin will seek such answers directly from the Small Business Administration and will provide the Administration agency with full assistance in uncovering Ms. Gunkova's abuse of the SBA loan process, including informing the SBA of the fraudulent documents submitted by Ms. Gunkova to the SBA.

**5.      Proposed Sale of the Property:**

To date, Ms. Gunkova has failed to provide Mr. Kamin with any documents and communications with Sands Investment Group, nor has Ms. Gunkova provided Mr. Kamin with all documents and communications with Montecito Medical.

Jay McDannell, Esq.
May 17, 2022
Page 3 of 4

**6.      Sterling Dental, Effective Management Solutions, and BAYADA Leases:**

To date, Ms. Gunkova continues to disregard Mr. Kamin's prior objections to the Leases and Building Improvements proposed by Ms. Gunkova with regards to Sterling Dental and Effective Management Solutions.  Ms. Gunkova has also failed to provide the documentation and communications with The Charles L. Feitel Company, LLC dba Health-Pro Realty Group, Legat, Dargo, and Bayview, as previously requested.  Mr. Kamin expressly rejects any and all charges that Ms. Gunkova has unilaterally obligated BNG.

Ms. Gunkova now proposes BNG undertake a <u>third</u> build-out, this time for BADAYA Home Health Care, Suite 460.  Mr. Kamin objects to the build-out for BADAYA and demands that BNG not enter into a Lease for which it cannot financially provide for the proposed terms (i.e., the build-out).   Mr. Kamin further demands all documentation, communications, and information relating to the proposed tenancy of BADAYA.

**7.      Jackson Clinic Early Termination:**

To date, Ms. Gunkova has not provided Mr. Kamin with a copy of the Lease with Jackson Clinic, nor has Ms. Gunkova identified who is handling the legal negotiations with Jackson Clinic or Old Dominion, and whether an attorney has been hired to render legal advice to BNG, and the status of the request, as requested by Mr. Kamin.

**8.      Elevator Repairs:**

Mr. Kamin is in receipt of three proposals relating to the Property's elevator.  Mr. Kamin is considering the proposals and will provide Ms. Gunkova with his response in the near future. Until then, Mr. Kamin demands that Ms. Gunkova cease from taking any action relating to the "elevator modernization" requested by Ms. Gunkova.

To date, Ms. Gunkova has failed to inform Mr. Kamin as what, if anything, has been done to resolve the expired Certificates of Operation for the Property's elevator. Please immediately advise as to what is being done, if at all, to resolve this violation.

**9.      Email Accounts**:

I understand that you represent that the login information known to your clients is no longer applicable.  This fact does not moot Mr. Kamin's request for such information.  To date, we have not received the last-known login credentials for the email accounts created by and/or used by Ms. Gunkova and/or Mr. Bogatin including harry@bnggroupllc.com ; harry@ariamedispa.com; and grishak301@gmail.com.

**10.     Inspection of BNG Records**:

In accordance with the Court's ruling of October 15, 2021, Mr. Kamin has repeatedly attempted to obtain information in discovery from Ms. Gunkova, yet Ms. Gunkova's recent responses do not comply with the Court's ruling and Order of March 18.  Additionally, as you

Jay McDannell, Esq.
May 17, 2022
Page 4 of 4

should recall, Mr. Kamin and his expert previously appeared at the Property to obtain such information and inspection on December 1 pursuant to Va. Code § 13.1-1028 and were met with rejection from you on behalf of Ms. Gunkova.  All subsequent requests for inspection have similarly been rejected or gone unanswered.  Accordingly, and as stated in my prior letters, Mr. Kamin will proceed with filing the attached proposed Motion requesting the Court grant Mr. Kamin access to the Companies' records, including a forensic inspection of all devices used for Company business.  This letter, as well as all prior attempts, clearly satisfy all pre-filing requirements under Rule 4:15. Please advise by close of business on May 20, 2022 if your client is now willing to allow for such inspection. If not, and as requested in my email of earlier today, provide your available dates in June for a hearing on the Motion.

**********************

Mr. Kamin as a Member of BNG has express rights pursuant to Va. Code § 13.1-1028. As the majority of these requests are long outstanding, Mr. Kamin demands a response to ALL requests above within seven days of this letter.  Mr. Kamin looks forward to hearing from Ms. Gunkova (or you) and resolving these outstanding requests for information without the need for further court intervention.

Sincerely,

Bethany Benes