# RILEY WELCH LAPORTE
## & Associates
### Forensic Laboratories

Thomas Riley, B.S., *, **
Forensic Document Examiner
Michigan

Kristen Welch, B.S., *,**
Forensic Document Examiner
District of Columbia

Eric Cervenak, B.S.
Trace Evidence Examiner
Michigan

Marie Durina, B.B.A, *, **
Forensic Document Examiner
North Carolina

Todd W. Welch, B.A., *, **
Forensic Document Examiner
Michigan

Jennifer Naso, M.S.F.S.*
Forensic Document Examiner
New York

Robert May, B.S.
Latent Print Examiner
Michigan

Jeffrey Nye, M.S.
Forensic DNA Analyst
Michigan

Gerald M. LaPorte M.S.F.S., **,***
Forensic Chemist & Document Specialist
Virginia, Washington DC Metro Area

P.O. Box 70, Frankenmuth, Michigan 48734-0070
Telephone (517) 394-1512  Fax (517) 803-4403

# LABORATORY REPORT

September 8, 2021

Bethany Benes
Bethune Benes, PLLC
4290 Chain Bridge Road, Suite 302
Fairfax, VA 22030

**RE:** *Harry Kamin*

Dear Ms. Benes:

The evidence received is listed as follows:

## *Questioned Documents:*

Q1 – One (1) .pdf file titled "Operating Agreement of BNG Group, LLC (KAMIN 249 – 282)" dated February 20, 2020 bearing one questioned signature in the name Harry D Kamin

Q2 – One (1) .pdf file titled "First Amendment to the Operating Agreement of BNG Group, LLC" dated March 14. 2020 bearing one questioned signature in the name Harry D Kamin

Q3 – One (1) .pdf file titled "Power of Representation (GUNKOVA_000332 - 000333)" dated March 14, 2020 bearing one questioned signature in the name Harry D Kamin and a questioned notary in the name Fatima El-Hage

Q4 – Two (2) .pdf files titled "Operating Agreement of BNG Group, LLC (KAMIN 001-034)" dated March 20, 2020 bearing one questioned signature in the name Harry D Kamin

Q5 – One (1) .pdf file titled "Membership Interest Transfer Agreement (GUNKOVA_000055 - 000057)" dated May 16, 2020 bearing one questioned signature in the name Harry D Kamin and a questioned notary in the name Kirk Hilliard

Q6 – One (1) .pdf file titled "Amendment No. 1 to Contract of Sale (GUNKOVA_000175)" dated August 17, 2020 bearing one questioned signature in the name Harry D Kamin

Q7 – One (1) .pdf file titled "Atlantic Union Bank (GUNKOVA 003807-003810)" dated August 28, 2020 bearing two questioned signatures in the name Harry D Kamin

Q8 – One (1) .pdf file titled "Amendment No. 2 to Contract of Sale (GUNKOVA_000176)" dated September 27, 2020 bearing one questioned signature in the name Harry D Kamin

Q9 – One (1) .pdf file titled "Amendment No. 3 to Contract of Sale (GUNKOVA_000177)" dated September 29, 2020 bearing two questioned signatures in the name Harry D Kamin

*Diplomate of the American Board of Forensic Document Examiners, Inc.
**American Society of Questioned Document Examiners
***Fellow of the American Academy of Forensic Sciences

www.ril...

PLAINTIFF'S EXHIBIT
17

RILEY WELCH LAIRD
& Associates
Forensic Laboratories

## *Questioned Documents (continued):*

Q10 – One (1) .pdf file titled "Amended and Restated Operating Agreement of BNG Group, LLC (GUNKOVA_000036 - 000048)" dated October 29, 2020 bearing one questioned signature in the name Harry D Kamin and a questioned notary in the name Kirk Hilliard

Q11 – One (1) .pdf file titled "Second Amendment to Operating Agreement of BNG Group, LLC (GUNKOVA_000049 - 000052)" dated October 29, 2020 bearing one questioned signature in the name Harry D Kamin and a questioned notary in the name Kirk Hilliard

Q12 – One (1) .pdf file titled "Members Meeting of BNG Group, LLC (GUNKOVA_000053 - 000054)" dated October 29, 2020 bearing one questioned signature in the name Harry D Kamin

## *Known Documents:*

K1 – One (1) .pdf file titled "Assignment of Rents and Leases (GUNKOVA_000230 – 000236)" dated October 30, 2020 bearing one known signature in the name Harry D Kamin

K2 – One (1) .pdf file titled "Atlantic Union Bank – Certification of Beneficial Owners (GUNKOVA_000274)" dated October 30, 2020 bearing two known signatures in the name Harry D Kamin

K3 – One (1) .pdf file titled "Debtors Consent to File Financing Statement (GUNKOVA_000259 – 000271)" not dated bearing two known signatures in the name Harry D Kamin

K4 – One (1) .pdf file titled "Dead of Trust, Assignment of Rents and Security Agreement (GUNKOVA_000203 - 000229)" dated October 30, 2020 bearing one known signature in the name Harry D Kamin

K5 – One (1) .pdf file titled "Environmental Indemnity Agreement (GUNKOVA 000248 – 000256)" dated October 30, 2020 bearing two known signatures in the name Harry D Kamin

K6 – One (1) .pdf file titled "Errors and Omissions/Compliance Agreement (GUNKOVA_000272 - 000273" dated October 30, 2020 bearing two known signatures in the name Harry D Kamin

K7 – One (1) .pdf file titled "Guaranty and Indemnification Agreement (GUNKOVA_000237 – 000247)" dated October 30, 2020 bearing one known signature in the name Harry D Kamin

K8 – One (1) .pdf file titled "Loan and Security Agreement (GUNKOVA_000183 – 000196)" dated October 30, 2020 bearing two known signatures in the name Harry D Kamin

K9 – One (1) .pdf file titled "Post Closing Agreement (GUNKOVA_000276 – 000279)" dated October 30, 2020 bearing two known signatures in the name Harry D Kamin

K10 – One (1) .pdf file titled "Promissory Note (GUNKOVA_000198 – 000202)" dated October 30, 2020 bearing one known signature in the name Harry D Kamin

K11 – One (1) .pdf file titled "Resolutions of Members of BNG Group, LLC (GUNKOVA_000257 – 000258)" dated October 30, 2020 bearing one known signature in the name Harry D Kamin

*Diplomate of the American Board of Forensic Document Examiners, Inc.*
**American Society of Questioned Document Examiners*
***Fellow of the American Academy of Forensic Sciences*

www.rileywelch.com

RILEY WELCH LaROCHE
& Associates
Forensic Laboratories

## *Known Documents (continued):*

K12 –  One (1) .pdf file titled "Settlement Statement (GUNKOVA_000300 – 000204)" dated October 30, 2020 bearing one known signature in the name Harry D Kamin

K13 –  One (1) .pdf file titled "March – June 2020 Checks (KAMIN 055 - 057)" consisting of check numbers 164 – 165, 167 – 168, 175 – 178, 180 – 182, 199 dated from March 8, 2020 to September 5, 2020 each bearing one known signature in the name Harry D Kamin

K14 –  One (1) .pdf file titled "Contract of Sale (GUNKOVA_000116 – 000131)" dated March 6, 2020 bearing one known notary in the name Fatima El-Hage

K15 –  One (1) .pdf file titled "Shipping Label (GUNKOVA_000331)" bearing known writing of Jacob Bogatin

## *Examination Request:*

Conduct a comprehensive forensic examination of the questioned documents to determine the following:

1. Authorship of questioned signatures prepared in the name Harry D Kamin.

2. Whether there is evidence of any salient features such as alterations, obliterations, erasures, text substitution, page substitutions and other indicia of inconsistencies that may be indicative of fraudulent preparation.

## *Range of Opinions:*

Often, a forensic document examiner is able to offer conclusive, unqualified opinions of the identification or elimination of writing as well as determining whether a document is genuine or fraudulently produced.  At other times, a myriad of factors can contribute to a forensic document examiner being unable to render a conclusive opinion.  For example, the questioned document may be of poor quality, limited in nature, or the available known samples may be limited; in addition, known writing samples may not be comparable to the writing in question, or the writings may be intentionally distorted or disguised.  In such cases, positive opinions of identification or elimination may not be possible.

In the event that the weight and significance of the evidence does not support a positive identification or elimination of writing or a conclusive finding of authenticity, forensic document examiners determine what level the weight and significance the evidence supports.  Opinions are then expressed on a scale, or range of opinions, from *indications* (or *indications did not*), *probable* (or *probable did not*), to *highly probable* (or *highly probable did not*).  At times, the only opinion which can be offered is an *inconclusive*.  An understanding of this range of opinions[1] and the reasoning for "qualified opinions" is necessary when reviewing the results of any examination.

## *Image Files/Photocopies:*

The examination of image files/photocopies in lieu of original documents requires a forensic document examiner to offer a qualified opinion.  This means *the opinions offered are based on the evidence discerned from the images/copies*.

The imaging/photocopy process can cause loss of detail.  A number of other factors may affect the quality of the image/copy, such as: the type and condition of scanner/copy machine, the settings used, whether the original

---

[1] Opinions regarding writing identification or elimination adhere to ASTM Standard E1658-04, ASTM International. For referenced ASTM standards, visit the ASTM website, www.astm.org, or contact ASTM Customer Service at service@astm.org.

*Diplomate of the American Board of Forensic Document Examiners, Inc.*
**American Society of Questioned Document Examiners*
***Fellow of the American Academy of Forensic Sciences*

RILEY WELCH (?) LA PORTE
& Associates
Forensic Laboratories

## Image Files/Photocopies (continued):

or some generation of copy is used (other than directly from the original). All of these factors may impede the ability of the examiner to reach a positive conclusion.

Also, evidence of fraud or non-genuineness may be revealed in the examination of an original document which cannot be seen in the image/copy. A request was made for the original documents to be submitted. The original documents were not able to be provided; therefore, the following observations and opinions are based on the examination of image files (non-originals).

## Basis of Examinations:

I performed examinations and comparisons using widely accepted procedures. As part of my examinations, I also rely, in part, on numerous published standards distributed by the Scientific Working Group for Forensic Document Examiners (SWGDOC).[2] My examinations and comparisons relied, in part, on the following standards, which can be found at the following web link:

> http://www.swgdoc.org/index.php/standards/published-standards
> - SWGDOC Standard for Scope of Work of Forensic Document Examiners
> - SWGDOC Standard for Examination of Handwritten Items
> - SWGDOC Standard for Examination of Altered Documents
> - SWGDOC Standard Terminology for Expressing Conclusions of Forensic Document Examiners

## Examinations Conducted:

A series of examinations were performed in this case using generally accepted procedures which are outlined in the following paragraphs. These include visual and comparative examinations of writing[3], formatting, and text alignment, along with imaging techniques.

## Handwriting Examinations:

Writing can be identified with the person who wrote it. A person can also be eliminated or excluded from having written something. Learning to write usually involves practicing letter formations, learning to copy these forms and committing them to memory, along with developing the skill, pen in hand, to write these forms quickly and fluidly. Practice usually increases the writer's skill[4] and produces writing that becomes more rapidly written, as the focus shifts more to the message being written than the physical movements of the writing act itself. This practiced movement becomes more fluid as this movement is committed to memory. Subsequently this fluid movement of the writing instrument creates physical characteristics of writing on the paper surface and observable features of the act of writing.

Writing consists of both class and individual characteristics. Class characteristics are common to large groups of writers and, in general, make writing similar enough for it to be understood by many. Examples of these characteristics may be the actual letter forms, or other features produced by large numbers of writers. Individual characteristics tend to be more identifying. It is the presence of the features found in both groups

---

[2] The SWGDOC standards can be found at the web link: http://www.swgdoc.org/index.php/standards/published-standards

[3] Conducted per E2290-03 "Standard Guide for Examination of Handwriting Items," ASTM International. For referenced ASTM standards, visit the ASTM website, www.astm.org, or contact ASTM Customer Service at service@astm.org. For Annual Book of ASTM Standards volume information, refer to the standard's Document Summary page on the ASTM website.
[4] "Writing is the result of a very complex series of acts, being as a whole a combination of certain forms which are the visible result of mental and muscular habits acquired by long continued, painstaking effort." Questioned Documents (Second Edition) by Albert S. Osborn, Chapter XVII, pp. 276.

*Diplomate of the American Board of Forensic Document Examiners, Inc.
**American Society of Questioned Document Examiners
***Fellow of the American Academy of Forensic Sciences

www.rileywelch.com

RILEY WELCH LaROCQUE
& Associates
Forensic Laboratories

Case 23-11261-BFK    Doc 134-18    Filed 10/30/23    Entered 10/30/23 10:52:22    Desc
Exhibit(s) 17    Page 5 of 25

Harry Kamin                        September 8, 2021                        Page 5 of 25

## Handwriting Examinations (continued):

of characteristics, when considered and weighed in combination, that provides a basis for the determination of the genuineness of writing.

The identification or elimination of writing is dependent upon a large number of factors. These factors include, but are not limited to, whether the writing in question is freely and naturally written, whether the questioned and known writing are comparable in nature and date, if sufficient known and questioned writing is provided, as well as whether sufficient known samples are provided for comparison purposes which demonstrate an appropriate range of variation of the known writer's habits. Some of these physical characteristics are visible to the unaided eye, however using a microscope or other magnification devices to view the written line allows the forensic document examiner to carefully study and weigh the finer characteristics; the physical evidence of the movement of the pen on the surface of the paper.

## Handwriting Variation:

Handwriting variation describes the concept that no one writer is able to write the exact same way twice. For example, if a person were to write a sentence, a word, or even their own signature, he or she would not be able to replicate the size, shape, spacing, and slant exactly so that the two writings, when superimposed on one another, would perfectly line up. Humans are not machines and cannot write with machine-like precision. While there are discrepancies in the writing, the handwriting follows the same pattern or "blueprint" of construction. In other words, the movement and direction of the pen is consistent between writings, however the writings will not be exact duplicates of one another. This is what is meant by a person's natural variation. There is an expectation to see these discrepancies, however minute, in an individual's handwriting. When an examiner does come across two writings that are precise overlays of one another, that is evidence of a copy, tracing, or digital manipulation.

## Handwriting Observations:

### Evaluation of the Questioned Signatures

The questioned documents, designated as Q1 through Q12, are average quality image files. Although non-original, enough detail can be seen to be suitable for examination. The signatures in question are prepared in the name Harry D Kamin.

In conducting an examination of the questioned Harry D Kamin signatures, it was determined that the questioned signatures could be grouped into three subsets:

- Group 1 consists of questioned Harry D Kamin signatures appearing on the Power of Representation (Q3), the Operating Agreement dated March 20, 2020 (Q4), and the Membership Interest Transfer Agreement (Q5)

- Group 2 consists of questioned Harry D Kamin signatures appearing on the Operating Agreement dated February 20, 2020 (Q1), the Amendment No. 1 to Contract of Sale (Q6), the Atlantic Union Bank (Q7), the Amendment No. 2 to Contact of Sale (Q8), and the Amendment No. 3 to Contact of Sale (Q9).

- Group 3 consists of questioned Harry D Kamin signatures appearing on the 1st Amendment to the Operating Agreement (Q2), the Amended and Restated Operating Agreement (Q10), the 2nd Amendment to the Operating Agreement (Q11), and October 29th, 2020 Members Meeting (Q12)

*Diplomate of the American Board of Forensic Document Examiners, Inc.
**American Society of Questioned Document Examiners
***Fellow of the American Academy of Forensic Sciences

www.rileywelch.com

RILEY, WELCH & Associates
Forensic Laboratories

**Harry Kamin**                     **September 8, 2021**                     **Page 6 of 25**

*Evaluation of the Questioned Signatures (continued):*

### Questioned Signatures in the name Harry D Kamin: Groups 1, 2, and 3

Group 1

Harry D. Kamin
Power of Representation
dated 03/14/20 (Q3)

HARRY KAMIN, Manager
Operating Agreement of BNG Group, LLC
dated 03/20/20 (Q4)

Harry D Kamin
Membership Interest Transfer Agreement
dated 05/16/20 (Q5)

Group 2

HARRY D KAMIN    MEMBER
Operating Agreement of BNG Group, LLC
dated 02/20/20 (Q1)

Amendment No. 1 to Contract of Sale
dated 08/17/20 (Q6)

Atlantic Union Bank
dated 08/28/20 (Q7)

Atlantic Union Bank
dated 08/28/20 (Q7)

Amendment No. 2 to Contact of Sale
dated 09/27/20 (Q8)

Amendment No. 3 to Contact of Sale
dated 09/29/2020 (Q9)

Amendment No. 3 to Contact of Sale
dated 09/29/2020 (Q9)

Group 3

Sterling Investment LLC
1st Amendment to the
Operating Agreement of BNG Group, LLC
dated 03/14/20 (Q2)

Harry D. Kamin, Member
Amended and Restated
Operating Agreement of BNG Group, LLC
dated 10/29/20 (Q10)

Harry D Kamin
2nd Amendment to the
Operating Agreement of BNG Group, LLC
dated 10/29/20 (Q11)

Harry D. Kamin, Member
Members Meeting of BNG Group, LLC
dated 10/29/20 (Q12)

*Diplomate of the American Board of Forensic Document Examiners, Inc.
**American Society of Questioned Document Examiners
***Fellow of the American Academy of Forensic Sciences

www.rileywelch.com

RILEY WELCH LAPORTE
& Associates
Forensic Laboratories

**Harry Kamin**                                         **September 8, 2021**                                         **Page 7 of 25**

## Evaluation of the Known Signatures

The known documents designated as K1 through K13, consist of non-original, collected specimens from Harry D Kamin and are average quality image copies. The known signatures reveal some evidence of being freely and naturally executed. These characteristics include hooks, variation in line widths, and tapered strokes. There are enough signatures to establish a range of variation for the known writer, Harry D Kamin. The known signatures are consistent with one another, contemporaneous to the questioned signatures, and are suitable for examination.

### Known Signatures of Harry D Kamin



HARRY KAMIN, Manager
Assignments of Rents and Leases
dated 10/30/2020 (K1)

HARRY KAMIN, Manager
Environmental Indemnity Agreement
dated 10/30/20 (K5)

HARRY KAMIN
Loan and Security Agreement
dated 10/30/20 (K8)

AUB - Certification of Beneficial Owners
dated 10/30/20 (K2)

HARRY KAMIN
Environmental Indemnity Agreement
dated 10/30/20 (K5)

HARRY KAMIN, Manager
Post Closing Agreement
dated 10/30/20 (K9)

AUB - Certification of Beneficial Owners
dated 10/30/20 (K2)

HARRY KAMIN, Manager
Errors and Omissions/Compliance
Agreement dated 10/30/20 (K6)

HARRY KAMIN
Post Closing Agreement
dated 10/30/20 (K9)

HARRY KAMIN, Manager
Debtors Consent to File Financing
Statement not dated (K3)

HARRY KAMIN
Errors and Omissions/Compliance
Agreement dated 10/30/20 (K6)

HARRY KAMIN, Manager
Promissory Note
dated 10/30/20 (K10)

HARRY KAMIN, Manager
Debtors Consent to File Financing
Statement not dated (K3)

HARRY KAMIN
Guaranty and Indemnification Agreement
dated 10/30/20 (K7)

HARRY KAMIN
Resolutions of Members of
BNG Group, LLC  dated 10/30/20 (K11)

HARRY KAMIN, Manager
Dead of Trust, Assignment of Rents and
Security Agreement dated 10/30/20 (K4)

HARRY KAMIN, Manager
Loan and Security Agreement
dated 10/30/20 (K8)

HARRY KAMIN
Settlement Statement
dated 10/30/20 (K12)

Check 164
dated 03/08/20 (K13)

Check 175
dated 04/15/20 (K13)

Check 180
dated 06/23/20 (K13)

Check 165
dated 03/08/20 (K13)

Check 176
dated 04/15/20 (K13)

Check 181
dated 06/29/20 (K13)

Check 167
dated 03/10/20 (K13)

Check 177
dated 05/21/20 (K13)

Check 182
dated 07/10/20 (K13)

Check 168
dated 03/10/20 (K13)

Check 178
dated 06/13/20 (K13)

Check 199
dated 09/05/20 (K13)

*Diplomate of the American Board of Forensic Document Examiners, Inc.*
**American Society of Questioned Document Examiners*
***Fellow of the American Academy of Forensic Sciences*

www.rileywelch.com

RILEY WELCH LARAUTE
& Associates
Forensic Laboratories

**Harry Kamin**                    **September 8, 2021**                    **Page 8 of 25**

*Evaluation of the Known Signatures (continued):*

The known document Shipping Label, designated as K15, bears known writing of Jacob Bogatin. The Shipping Label also contains two signatures, names are illegible. This document was submitted for a comparative examination with the questioned Harry D Kamin signatures appearing on Q1 through Q13.

**Known Writing of Jacob Bogatin**



## Comparative Examination of the Questioned and Known Signatures

A side-by-side comparison was conducted between the questioned signatures in the name Harry D Kamin appearing on Q1 through Q12 with the K1 through K13 Harry D Kamin signature samples.

### Group 1:

A comparative examination of the Group 1: Power of Representation (Q3) and Operating Agreement dated March 20, 2020 (Q4) questioned signatures in the name Harry D Kamin with the known signatures of Harry D Kamin resulted in evidence indicative of manipulation.

The Harry D Kamin signature appearing on the Power of Representation (Q3) may have been digitally cut and pasted onto the document. A fundamental difference exists between this signature and the known signatures in that the questioned Harry D Kamin signature appearing on the Power of Representation (Q3) is located substantially high above the baseline. This is divergent from the known exemplars which are prepared on/just above the baseline. Although similarities exist in the writing habits between the questioned and known signatures, the positioning of this signature above the baseline is indicative of fraudulent preparation and caution should be exercised in accepting the veracity and intent.

*Diplomate of the American Board of Forensic Document Examiners, Inc.*
**American Society of Questioned Document Examiners*
***Fellow of the American Academy of Forensic Sciences*

www.rileywelch.com

RILEY WELCH & Associate
Forensic Laboratories

*Group 1 (continued):*

### Comparative Examination of Harry D Kamin Signature on Q3 with Known
### (Representative Sample)



Fundamental Difference: ➡

Harry D. Kamin
Power of Representation
dated 03/14/20 (Q3)

Check 164
dated 03/08/20 (K13)

Check 167
dated 03/10/20 (K13)

Check 165
dated 03/08/20 (K13)

Check 168
dated 03/10/20 (K13)

In conducting a comparative examination of the Harry D Kamin signature appearing on the Operating Agreement dated March 20, 2020 (Q4) with the submitted known signature exemplars (K1 through K13), it was determined that the questioned Harry D Kamin signature shares a common source with one of the known Harry D Kamin signatures appearing on the Errors and Omissions/Compliance Agreement (K6). An overlay was conducted and the signatures are in registration. Furthermore, the questioned Harry D Kamin signature on the Operating Agreement dated March 20, 2020, contains evidence of a digital cut and paste for entirety of the signature block to include the Valeria Gunkova signature: portions of the baseline are absent and text from the Errors and Omissions/Compliance Agreement (K6) is observed below the Harry D Kamin signature.

### Questioned Harry D Kamin Signature on the Operating Agreement dated March 20. 2020 (Q4)

Evidence of a digital cut and paste: ➡

HARRY KAMIN, Manager

VALERIA GUNK OVA, Manager

*Diplomate of the American Board of Forensic Document Examiners, Inc.*
**American Society of Questioned Document Examiners*
***Fellow of the American Academy of Forensic Sciences*

www.rileywelch.com

RILEY WELCH LAFRATE
& Associates
Forensic Laboratories

*Group 1 (continued):*

**Overlay of Harry D Kamin and Valeria Gunkova Signatures**

Operating Agreement of BNG Group, LLC
dated 03/20/20 (Q4)

Errors and Omissions/Compliance
Agreement dated 10/30/20 (K6)

Overlay of the Questioned Signature appearing on the Operating Agreement of BNG Group, LLC dated 03/20/20
with the Known Signature appearing on the Errors and Omissions/Compliance Agreement dated 10/30/20

Overlay of the Harry D Kamin signature

Overlay of the Valeria Gunkova signature

*Diplomate of the American Board of Forensic Document Examiners, Inc.*
**American Society of Questioned Document Examiners*
***Fellow of the American Academy of Forensic Sciences*

www.rileywelch.com

RILEY WELCH LaROCHE
& Associates
Forensic Laboratories

*Group 1 (continued):*

A comparative examination of the questioned Harry D Kamin signature appearing on the Membership Interest Transfer Agreement (Q5) with the known Harry D Kamin signatures resulted in the presence of significant similarities to include letter formation, relationship to baseline, slant, height relationships, and connected and disconnected strokes. However, it should be noted that in an examination of the Membership Interest Transfer Agreement as a whole is skewed in nature. The severe skewness of the document precludes a determination as to whether or not there is evidence of a digital cut and paste. Therefore, submission of the original document in lieu of the .pdf file image is needed for a determination of authenticity or digital manipulation (see the Text Alignment section of this report).

**Comparative Examination of Harry D Kamin Signatures on the Membership Interest Transfer**
**Agreement (Q5) with Known Signatures**
**(Representative)**

Similarities:



Membership Interest Transfer Agreement
dated 05/16/20 (Q5)

Loan and Security Agreement
dated 10/30/20 (K8)

Check 164
dated 03/08/20 (K13)

Check 168
dated 03/10/20 (K13)

Check 199
dated 09/05/20 (K13)

***Group 2:***
In the evaluation of the questioned signatures *independent* of the known, the questioned Harry D Kamin signatures labeled "Group 2" appearing on the Operating Agreement dated February 20, 2020 (Q1), the Amendment No. 1 to Contract of Sale (Q6), the Atlantic Union Bank (Q7), the Amendment No. 2 to Contact of Sale (Q8), and the Amendment No. 3 to Contact of Sale (Q9) contain pictorial similarities and similar skillset; therefore, these signatures were intercompared to determine whether or not they were prepared by one writer (at this time, a writer(s) is unknown). The most significant similarity observed throughout all of the signatures is the formation of the capital letter "D". The "D" letter formation is comprised of two separate strokes. Furthermore, all of the signatures contain the letter "n" that has a backwards appearance.

The signatures appearing on the left side of the chart below contain many connecting strokes while the signatures on the right contain fewer connecting strokes. The signatures on the left contain a one-stroke "H" while those on the right contain what appears to be a two-stroke H.

*Diplomate of the American Board of Forensic Document Examiners, Inc.*
**American Society of Questioned Document Examiners*
***Fellow of the American Academy of Forensic Sciences*

www.rileywelch.com

RILEY WELCH LAPRADE
& Associates
Forensic Laboratories

**Harry Kamin**                    **September 8, 2021**                    **Page 12 of 25**

*Group 2 (continued):*

**Intra-comparative Examination of Questioned Harry D Kamin Signatures**
**Group 2**

Similarities:



Operating Agreement of BNG Group, LLC
dated 02/20/20 (Q1)

Atlantic Union Bank
dated 08/28/20 (Q7)

Amendment No. 1 to Contract of Sale
dated 08/17/20 (Q6)

Amendment No. 2 to Contact of Sale
dated 09/27/20 (Q8)

Atlantic Union Bank
dated 08/28/20 (Q7)

Amendment No. 3 to Contact of Sale
dated 09/29/2020 (Q9)

Amendment No. 3 to Contact of Sale
dated 09/29/2020 (Q9)

Based on the presence of corresponding similarities in overall letter formation, slant, spatial relationships, and beginning and ending strokes, it was determined that there are indications that the Harry D Kamin signatures appearing on the Operating Agreement dated February 20, 2020 (Q1), the Amendment No. 1 to Contract of Sale (Q6), the Atlantic Union Bank (Q7), the Amendment No. 2 to Contact of Sale (Q8), and the Amendment No. 3 to Contact of Sale (Q9) may share common authorship.

*Diplomate of the American Board of Forensic Document Examiners, Inc.*
**American Society of Questioned Document Examiners*
***Fellow of the American Academy of Forensic Sciences*

www.rileywelch.com

RILEY WELCH LAFLEUR
& Associates
Forensic Laboratories

**Harry Kamin**                    **September 8, 2021**                    **Page 13 of 25**

*Group 2 (continued):*

A comparative examination of the Group 2 questioned Harry D Kamin signatures was conducted with the known Harry D Kamin signatures. For representation purposes, the questioned Harry D Kamin signatures appearing on the Atlantic Union Bank (Q7) are charted below with contemporaneous known signatures of Harry D Kamin.

**Comparative Examination of Harry D Kamin Signatures on Atlantic Union Bank (Q7)**
**with Known Signatures**
**(Representative)**

Dissimilarity: →    Similarity: →



It is highly probable that Harry D Kamin did not sign the questioned signatures appearing on Operating Agreement dated February 20, 2020 (Q1), the Amendment No. 1 to Contract of Sale (Q6), the Atlantic Union Bank (Q7), the Amendment No. 2 to Contact of Sale (Q8), and the Amendment No. 3 to Contact of Sale (Q9). Significant differences are observed between the questioned and known signatures and include overall letter formation, spatial relationships, slant, height relationships, relationships to baseline, and connected and disconnected strokes.

*Diplomate of the American Board of Forensic Document Examiners, Inc.
**American Society of Questioned Document Examiners
***Fellow of the American Academy of Forensic Sciences
www.rileywelch.com

RILEY WELCH & Associates
Forensic Laboratories

*Group 2 (continued):*

The Shipping Label containing extended writing of Jacob Bogatin was provided as known and was designated as K15. The writing on the Shipping Label contains pictorial similarities to the questioned Harry D Kamin signatures appearing in Group 2; therefore, a comparative examination was conducted.

**Comparative Examination of the Questioned Harry D Kamin Signatures (Group 2)
with the Shipping Label (K15)
(Representative)**



There are indications that Jacob Bogatin, the writer of the Shipping Label (K15), may have written the questioned signatures in the name Harry D Kamin appearing in Group 2: Operating Agreement dated February 20, 2020 (Q1), the Amendment No. 1 to Contract of Sale (Q6), the Atlantic Union Bank (Q7), the Amendment No. 2 to Contact of Sale (Q8), and the Amendment No. 3 to Contact of Sale (Q9). Similarities exist between the Group 2 Harry D Kamin signatures with the known writing on the Shipping Label (K15). These similarities include letter formations, spatial relationships, height relationships, relationship to baseline, and beginning, connecting, and ending strokes. This finding is limited due to the limited nature of the known writing. A more definitive finding may be reached should more comparable known writing be submitted.

*Diplomate of the American Board of Forensic Document Examiners, Inc.*
**American Society of Questioned Document Examiners*
***Fellow of the American Academy of Forensic Sciences*

www.rileywelch.com

RILEY·WELCH·&·ASSOCIATE
& Associates
Forensic Laboratories

*Group 3:*

When conducting an intra-comparative examination of the Harry D Kamin signatures appearing on 1st Amendment to the Operating Agreement dated March 14, 2020 (Q2), Amended and Restated Operating Agreement (Q10), 2nd Amendment to the Operating Agreement (Q11), and the October 29, 2020 Members Meeting (Q12), it was observed that all four questioned Harry D Kamin signatures share a striking resemblance. An overlay was conducted and resulted in the signatures being duplicates of one another, therefore sharing a common source. The original source document could not be determined. Furthermore, it is entirely possible that the source document is not one of these four documents in question.

### Overlay of the Questioned Signatures in Group 3



Sterling Investment LLC
1st Amendment to the
Operating Agreement of BNG Group, LLC
dated 03/14/20 (Q2)

Harry D. Kamin, Member
Amended and Restated
Operating Agreement of BNG Group, LLC
dated 10/29/20 (Q10)

Harry D Kamin
2nd Amendment to the
Operating Agreement of BNG Group, LLC
dated 10/29/20 (Q11)

Harry D. Kamin, Member
Members Meeting of BNG Group, LLC
dated 10/29/20 (Q12)

*Diplomate of the American Board of Forensic Document Examiners, Inc.
**American Society of Questioned Document Examiners
***Fellow of the American Academy of Forensic Sciences

www.rileywelch.com

RILEY WELCH LAPRADE
& Associates
Forensic Laboratories

**Harry Kamin**                    **September 8, 2021**                    **Page 16 of 25**

### Evaluation and Examination of the Questioned Fatima El-Hage Notary

After an examination of the questioned Harry D Kamin signatures appearing on Q1 through Q12, the questioned notary in the name Fatima El-Hage appearing on the Power of Representation (Q3) was evaluated and determined to be suitable for examination.

### Questioned Notary of Fatima El-Hage appearing on the Power of Representation (Q3)



Additionally, the known notary in the name Fatima El-Hage appearing on the Contract of Sale dated March 6, 2020 (K14) was evaluated and determined to be suitable for examination.

### Known Notary of Fatima El-Hage appearing on the Contract of Sale dated March 6, 2020 (K14)



Examination of the questioned Fatima El-Hage notary appearing on the Power of Representation (Q3) was conducted with the known Fatima El-Hage notary appearing on the Contract of Sale dated March 6, 2020 (K14). A comparative examination of these two notarys revealed striking similarities and an overlay was conducted. This overlay resulted in the entire notary block being a duplicate, therefore sharing a common source. Even the finest of details was transferred between these two documents to include unique identifiers such as trash marks and scan markings (highlighted in purple below).

*Diplomate of the American Board of Forensic Document Examiners, Inc.*
**American Society of Questioned Document Examiners**
***Fellow of the American Academy of Forensic Sciences***

www.rileywelch.com

*Examination of the Notary (continued):*

### Overlay of the Notary Blocks in the name Fatima El-Hage

Notary Block from Questioned Document
Power of Representation dated March 14, 2020 (Q3)

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[Seal]

Notary Public
Name:

Notary Registration Number:
My Commission Expires:

Notary Block from Known Document
Contract of Sale dated March 6, 2020 (K14)

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[Seal]

Notary Public
Name:

Notary Registration Number:
My Commission Expires:

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[Seal]

Notary Public
Name:

Notary Registration Number:
My Commission Expires:

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[Seal]

Notary Public
Name:

Notary Registration Number:
My Commission Expires:

*Diplomate of the American Board of Forensic Document Examiners, Inc.*
**American Society of Questioned Document Examiners*
***Fellow of the American Academy of Forensic Sciences*

www.rileywelch.com

RILEY WELCH & Associates
Forensic Laboratories

## *Text Alignment/Digital Manipulation Examinations:*

In fraudulent documents, modifying clauses, sentences and/or paragraphs can completely change the meaning or intent of a document. The skill in which these modifications can occur can range from obvious and crude to unnoticed and skillfully inserted text. Some skillfully executed insertions may go unnoticed by the casual observer. However, a thorough forensic examination can reveal evidence of interlineations, additions, and digital manipulations.

## *Text Alignment/Digital Manipulation Observations:*

The text and signatures on the Operating Agreement dated March 20, 2020 (Q4) and the Membership Interest Transfer Agreement (Q5) were examined to determine if there were any inconsistencies within the vertical and horizontal alignments. These types of examinations are critical in determining whether the text or signature blocks on the documents were printed at one time, or if they were printed multiple times by adding or modifying text/signatures and therefore, changing the intent of the document.

In conducting an examination of the Operating Agreement dated March 20, 2020 (Q4) (bates labeled KAMIN 001-034), it was observed that the page bates labeled KAMIN 002 appeared to be inconsistent with the remainder of the pages comprising the exhibit. There is a font change in the word "BACKGROUND"; additionally, the font size throughout this page appears to be inconsistent with the remaining pages comprising the exhibit, and there is a visible difference in the clarity of the print when compared to the remainder of the document. The pages bates labeled KAMIN 003 – 034 are double sided with print visible from the reverse side of the page. This is inconsistent with the page bates labeled KAMIN 002 which does not contain printed text on the reverse side of the page. The forensic significance of these observations could not be determined and the original document is necessary for further examination to determine the presence of any alterations to include page substitution.

### Operating Agreement dated March 20, 2020 (Q4)

#### (KAMIN 002)                          (KAMIN 003)

*Diplomate of the American Board of Forensic Document Examiners, Inc.*
**American Society of Questioned Document Examiners*
***Fellow of the American Academy of Forensic Sciences*

www.rileywelch.com

RILEY WELCH LaBARRE
& Associates
Forensic Laboratories

**Operating Agreement dated March 20, 2020 (Q4)**

**KAMIN 002 (excerpt)**

### BACKGROUND

**The Members formed BNG GROUP, LLC**
(the "Company") as a Virginia limited liability company under the Virginia Limited Liability
Company Act by filing a Certificate of Organization with the Department of State of the
Commonwealth of Virginia on 17 day of September 2019. The Members intend this Agreement
to set forth the rights and obligations of each of the Members regarding the Company and each
other and to provide for the management and operation of the Company.

### AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the legal sufficiency of which
is hereby acknowledged, and intending to be legally bound hereby, the parties agree as follows:

**Operating Agreement dated March 20, 2020 (Q4)**

**KAMIN 003 (excerpt)**

Capital Account means the account to be maintained by the Company for each Member
in accordance with the following provisions:

(i)      A Member's Capital Account shall be credited with the Member's Capital
Contributions, the amount of any Company liabilities assumed by the Member (or which are
secured by Company property distributed to the Member), the Member's distributive share of
Profit and any item in the nature of income or gain specially allocated to such Member pursuant
to the provisions of Section IV (other than Section 4.3.3); and

(ii)     A Member's Capital Account shall be debited with the amount of money
and the fair market value of any Company property distributed to the Member, the amount of any
liabilities of the Member assumed by the Company (or which are secured by property
contributed by the Member to the Company), the Member's distributive share of Loss, and any
item in the nature of expenses or losses specially allocated to the Member pursuant to the
provisions of Section IV (other than Section 4.3.3).

Examination of the Membership Interest Transfer Agreement (Q5), consisting of three pages, revealed
evidence of severe skewness to the document. Upon rotation of the document utilizing Photoshop with a grid
overlay, none of the pages could reach proper alignment. It was observed that on page 1, the bullet points of
1, 2, and 3 are not in vertical alignment. The formatting of bullet 2 is not consistent with bullets 1 and 3. On
page 2, skewness is observed beginning at bullet point number 9 through the remainder of the page, where
bullets 9, 10, and 11 along with their headers, deviate from the remainder of the document. This is observed
again on the signature page bearing notarization, page 3. Page 3 could not be aligned in its entirety. Where
one aspect of the document is in alignment (i.e., the first line of text), another aspect of the document is still
severely misaligned (i.e., the text for the placement of the notary).

The location of the page number on page 3, the signature page, appears just below the middle of the
document. This is a deviation off of what is observed on page 2 where the page number is located at the
bottom center of the document, an expected placement. The forensic significance of this observation of the
page 3 placement could not be determined.

Given these observations, the original document is necessary for further examination to determine the
presence of any alterations to include text insertion. Caution should be used in accepting this document as a
true and accurate representation of the original document.

*Diplomate of the American Board of Forensic Document Examiners, Inc.
**American Society of Questioned Document Examiners
***Fellow of the American Academy of Forensic Sciences

www.rileywelch.com

RILEY WELCH
& Associates
Forensic Laboratories

## Membership Interest Transfer Agreement (Q5)
### (as received | pre-rotation)

**(Page 1)**                                                    **(Page 2)**



**(Page 3)**

*Diplomate of the American Board of Forensic Document Examiners, Inc.
**American Society of Questioned Document Examiners
***Fellow of the American Academy of Forensic Sciences

www.rileywelch.com

RILEY WELCH LaPARO
& Associates
Forensic Laboratories

### Membership Interest Transfer Agreement (Q5)
### (post-rotation)

**(Page 1)**                                      **(Page 2)**



**(Page 3)**

*Diplomate of the American Board of Forensic Document Examiners, Inc.*
**American Society of Questioned Document Examiners*
***Fellow of the American Academy of Forensic Sciences*

www.rileywelch.com

**Harry Kamin**                    **September 8, 2021**                    **Page 22 of 25**

**Membership Interest Transfer Agreement (Q5) (Page 3)**
**In Alignment**

**Membership Interest Transfer Agreement (Q5) (Page 3)**
**Mis-Aligned**

## *Summary of Observations:*

To summarize, the following observations are based on thorough examinations of the documents submitted in dispute and are listed as follows (in numerical order):

1. There are numerous dissimilar handwriting habits between the questioned Harry D Kamin signature on the Operating Agreement of BNG Group, LLC dated 2/20/20 (Q1) and the known signatures of Harry D Kamin.

2. There are similarities that exist between the questioned Harry D Kamin signature on the Operating Agreement of BNG Group, LLC dated 2/20/20 (Q1) and the known writing of Jacob Bogatin appearing on the Shipping Label (K15).

3. The questioned Harry D Kamin signature on the 1st Amendment to the Operating Agreement of BNG Group, LLC dated 3/14/20 (Q2) was determined to be a duplicate signature and shares a common source with the Harry D Kamin signatures on the Amended and Restated Operating Agreement of BNG Group, LLC (Q10), the 2nd Amendment to the Operating Agreement of BNG Group, LLC (Q11), and the October 29, 2020 Members Meeting of BNG Group, LLC (Q12).

4. The questioned Harry D Kamin signature on the Power of Representation (Q3) is positioned significantly high above the baseline which is different from the known signatures that are executed on or just slightly above the baseline indicating evidence of manipulation.

5. The questioned Fatima El-Hage notary on the Power of Representation (Q3) was determined to be a duplicate notary block and shares a common course with the Fatima El-Hage notary on the Contract of Sale dated March 6, 2020 (K14).

*Diplomate of the American Board of Forensic Document Examiners, Inc.
**American Society of Questioned Document Examiners
***Fellow of the American Academy of Forensic Sciences

www.rileywelch.com

RILEY WELCH LAROCHE
& Associates
Forensic Laboratories

**Harry Kamin**                    **September 8, 2021**                    **Page 23 of 25**

## *Summary of Observations (continued):*

6.  The questioned Harry D Kamin signature on the Operating Agreement of BNG Group, LLC dated 3/20/20 (Q4) was determined to be a duplicate signature, originating from the Errors and Omissions/Compliance Agreement dated 10/30/20 (K6).

7.  The page bates labeled KAMIN 002 in the Operating Agreement of BNG Group, LLC dated 3/20/20 (Q4) is inconsistent with the remaining pages comprising the exhibit.

8.  There are numerous similarities that exist between the questioned Harry D Kamin signature on the Membership Interest Transfer Agreement (Q5) and the known signatures of Harry D Kamin.

9.  The Membership Interest Transfer Agreement (Q5) is severely skewed. Upon rotation of the document, none of the pages could reach proper alignment to include the signature and notarization page, page 3. If some portion of the document is aligned, there are portions that are mis-aligned. Additionally, the placement of the page number 3 is placed outside of a designated "footer" which is inconsistent with what is observed on page 2.

10. There are numerous dissimilar handwriting habits between the questioned Harry D Kamin signature on the Amendment No. 1 to Contract of Sale (Q6) and the known signatures of Harry D Kamin.

11. There are similarities that exist between the questioned Harry D Kamin signature on the Amendment No. 1 to Contract of Sale (Q6) and the known writing of Jacob Bogatin appearing on the Shipping Label (K15).

12. There are numerous dissimilar handwriting habits between the questioned Harry D Kamin signatures on the Atlantic Union Bank (Q7) and the known signatures of Harry D Kamin.

13. There are similarities that exist between the questioned Harry D Kamin signatures on the Atlantic Union Bank (Q7) and the known writing of Jacob Bogatin appearing on the Shipping Label (K15).

14. There are numerous dissimilar handwriting habits between the questioned Harry D Kamin signature on the Amendment No. 2 to Contact of Sale (Q8) and the known signatures of Harry D Kamin.

15. There are similarities that exist between the questioned Harry D Kamin signature on the Amendment No. 2 to Contact of Sale (Q8) and the known writing of Jacob Bogatin appearing on the Shipping Label (K15).

16. There are numerous dissimilar handwriting habits between the questioned Harry D Kamin signatures on the Amendment No. 3 to Contact of Sale (Q9) and the known signatures of Harry D Kamin.

17. There are similarities that exist between the questioned Harry D Kamin signatures on the Amendment No. 3 to Contact of Sale (Q9) and the known writing of Jacob Bogatin appearing on the Shipping Label (K15).

18. The questioned Harry D Kamin signature on the Amended and Restated Operating Agreement of BNG Group, LLC (Q10), was determined to be a duplicate signature and shares a common source with the Harry D Kamin signatures on the 1st Amendment to the Operating Agreement of BNG Group, LLC dated 3/14/20 (Q2), the 2nd Amendment to the Operating Agreement of BNG Group, LLC (Q11), and the October 29, 2020 Members Meeting of BNG Group, LLC (Q12).

19. The questioned Harry D Kamin signature on the 2nd Amendment to the Operating Agreement of BNG Group, LLC (Q11), was determined to be a duplicate signature and shares a common source with the Harry D Kamin signatures on 1st Amendment to the Operating Agreement of BNG Group,

*Diplomate of the American Board of Forensic Document Examiners, Inc.
**American Society of Questioned Document Examiners
***Fellow of the American Academy of Forensic Sciences

www.rileywelch.com

RILEY WELCH LAROCHE
& Associates
Forensic Laboratories

**Harry Kamin**                    **September 8, 2021**                    **Page 24 of 25**

## *Summary of Observations (continued):*

LLC dated 3/14/20 (Q2), the Amended and Restated Operating Agreement of BNG Group, LLC (Q10), and the October 29, 2020 Members Meeting of BNG Group, LLC (Q12).

20. The questioned Harry D Kamin signature on the October 29, 2020 Members Meeting of BNG Group, LLC (Q12) was determined to be a duplicate signature and shares a common source with the Harry D Kamin signatures on the 1st Amendment to the Operating Agreement of BNG Group, LLC dated 3/14/20 (Q2), the Amended and Restated Operating Agreement of BNG Group, LLC (Q10), and the 2nd Amendment to the Operating Agreement of BNG Group, LLC (Q11).

## *Results of Examination:*

Based on my professional experience, knowledge, established scientific principles, and the results from my observations and examinations, there are a substantial number of salient features observed in the disputed documents.

It is highly probable that Harry D Kamin did not write the questioned Harry D Kamin signatures on the Operating Agreement of BNG Group, LLC dated 2/20/20 (Q1), the Amendment No. 1 to Contract of Sale (Q6), the Atlantic Union Bank (Q7), the Amendment No. 2 to Contact of Sale (Q8), and the Amendment No. 3 to Contact of Sale (Q9).

There are indications that Jacob Bogatin, the known writer of the Shipping Label (K15), may have written the questioned Harry D Kamin signatures on the Operating Agreement of BNG Group, LLC dated 2/20/20 (Q1), the Amendment No. 1 to Contract of Sale (Q6), the Atlantic Union Bank (Q7), the Amendment No. 2 to Contact of Sale (Q8), and the Amendment No. 3 to Contact of Sale (Q9).

The questioned Harry D Kamin signature on the 1st Amendment to the Operating Agreement of BNG Group, LLC dated 3/14/20 (Q2), the Amended and Restated Operating Agreement of BNG Group, LLC (Q10), the 2nd Amendment to the Operating Agreement of BNG Group, LLC (Q11), and the October 29, 2020 Members Meeting of BNG Group, LLC (Q12)  are duplicate signatures that share a common source (source unknown). It is not possible for all four of these signatures to exist as original signatures with ink to paper execution.

There are indications that the questioned Harry D Kamin signature on the Power of Representation (Q3)  has been manipulated. The signature is positioned high above the baseline which is inconsistent and a fundamental difference when compared with the known signatures of Harry D Kamin.

The questioned Fatima El-Hage notary on the Power of Representation (Q3) is a duplicate notary block that shares a common source with the Fatima El-Hage notary appearing on the Contract of Sale dated March 6, 2020 (K14). It is not possible for this notary to exist in exact registration on two separate documents along with the transfer of unique identifiers of trash marks and/or scan markings.

The questioned Harry D Kamin signature on the Operating Agreement of BNG Group, LLC dated 3/20/20 (Q4) has been manipulated. This signature is a duplicate and originates from the signature on the Errors and Omissions/Compliance Agreement dated 10/30/20 (K6). In addition, the Operating Agreement of BNG Group, LLC dated 3/20/20 (Q4) contains a page (bates labeled KAMIN 002) that appears inconsistent with the remaining pages comprising the exhibit. Submission of the original is needed to determine alteration in the form of page substitution.

It is highly probable that Harry D Kamin wrote the questioned Harry D Kamin signature or its source on the Membership Interest Transfer Agreement (Q5). The skewed nature of the document precludes a determination of authenticity or digital manipulation.  Submission of the original is needed for such a determination.

*Diplomate of the American Board of Forensic Document Examiners, Inc.*
**American Society of Questioned Document Examiners*
***Fellow of the American Academy of Forensic Sciences*

www.rileywelch.com



**Harry Kamin**                                    **September 8, 2021**                                    **Page 25 of 25**

## *Results of Examination (continued):*

On the basis of the above, caution should be exercised in accepting the true meaning in which these documents are intended.  Submission of the original documents in lieu of the .pdf file images could assist in providing greater detail along with an accurate determination of how the documents were created.

The examinations and conclusions presented herein are based on the evidence available at this time.  I reserve the right to rely upon additional discovery that occurs after this report is submitted.  To the extent additional evidence becomes available relevant to the opinions expressed in this report, I will update my opinions as appropriate.

## *Demonstratives:*

I reserve the right to rely on visual aids or demonstratives not present in this report to demonstrate my opinions at trial.

## *Remarks:*

Thorough examinations were performed on the questioned documents.  Digital images/ charts were likewise prepared from these documents.  These images, when enhanced, allow for certain critical observations to be made.  They also provide a very strong approach for demonstrating the evidence to a Trier of Fact and can best be illustrated through use of a multi-media presentation.


Very truly yours,

RILEY WELCH LAPORTE & ASSOCIATES
FORENSIC LABORATORIES


Kristen E. Welch, D-ABFDE
Forensic Document Examiner

*Diplomate of the American Board of Forensic Document Examiners, Inc.*
**American Society of Questioned Document Examiners*
***Fellow of the American Academy of Forensic Sciences*

www.rileywelch.com